UNITED STATES of America, Plaintiff-Appellee,

v.

James Cromwell BAILEY, Defendant-Appellant.

No. 75–1552.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1975.

Decided Dec. 1, 1975.

Certiorari Denied March 22, 1976. See 96 S.Ct. 1472.

**140**

Christian J. Gielow, Gary, Ind., for defendant-appellant.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Fred W. Grady, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before ADAMS * and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.**

ADAMS, Circuit Judge.

James C. Bailey was indicted for violation of 18 U.S.C. § 1708 (1970), which deals, inter alia, with theft and receipt of stolen mail matter.[1] After a trial by a jury, Bailey was convicted and sentenced to five years imprisonment.

On this appeal, Bailey makes the following contentions: (1) the evidence was insufficient to sustain the jury's verdict; (2) the trial court erred in instructing the jury regarding Bailey's right not to testify; and (3) the trial court improperly denied Bailey's motion to suppress eight packets of U. S. Savings Bonds.

After a careful review of all the evidence and the defendant's contentions, we affirm.

### I.

In the late afternoon on January 28, 1975, two police officers on routine patrol observed an automobile coming towards them with one headlight not operating. The officers ordered the driver of the automobile to "pull over," and then approached the car and asked for the driver's license. While doing so, they noticed that the vehicle's safety inspection sticker had expired. The officers then advised the driver that they would have to issue two citations and that the car would have to be towed to the police station, where Bailey would be required to post bond. Bailey was then requested to leave the car and to accompany the officers to the stationhouse.

When Bailey opened the door in order to leave the car, the vehicle's interior light came on. As a result, one of the officers noticed what first appeared to be raffle tickets lying on the floor of the front of the car. When he looked more closely, the item turned out to be eight bundles or packets of U. S. Savings Bonds, in $50 and $100 denominations.

After counting $1000 of the bonds, one of the officers took them all to the police car, where his colleague made a complete count. It showed approximately $10,000 in bonds.

Bailey was then handcuffed, advised of his rights, and placed in the rear seat of the police vehicle. The officers com-

---

* The Honorable Arlin M. Adams, Circuit Judge of the United States Court of Appeals for the Third Circuit, is sitting by designation.

** The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. 18 U.S.C. § 1708 provides in part as follows:
   Whoever buys, receives or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—
   Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

pleted the inventory of Bailey's car, called for a tow truck, and returned to the police car. At that time Bailey volunteered that he had received the bonds from an individual named Forshee outside a bar called the Mokalai, in Chicago, that he had been asked to hold the bonds, and that he was promised 25% of their value for doing so.

After Bailey was placed in a cell in the police station, one of the officers asked him about a notebook that Bailey had been holding at the time of his arrest. Bailey refused to respond, but the other person in the cell pointed to a trash can. Among the papers in the trash can was a business card that had on the reverse side the number of the Gary, Indiana Police Department file pertaining to the robbery of the Gary Post Office in which $150,000 of blank bonds were stolen, including those bonds found in Bailey's automobile. Thereafter, in the course of an interview, Bailey said that he "had made a mistake and now had to pay for it" and that "he had got[ten] caught and now had to pay the consequences." Later, the police checked and found no bar in the area of Chicago that had been mentioned by Bailey.

## II.

■ Bailey's first contention is that the proof was insufficient to support his conviction because there was no direct evidence showing that he knew that the bonds were stolen.[2] In this connection, Bailey also complains that the trial court erred in the charge regarding inferences that could be drawn from the fact that the property was recently stolen, since the time lapse here was too long to permit application of the stolen-property rule.

We believe there was sufficient evidence presented to permit the jury to draw an inference that Bailey had knowledge that the bonds in question had been stolen. We also believe that the stolen-property rule was applicable.

The jury could have taken into account the manner in which Bailey had kept the bonds in his automobile—eight packages, tied with rubber bands on the floor of the front of the car. It could have considered Bailey's explanation of the source of the bonds—from a man he had not seen since the 1950's who allegedly handed them to him in a bar called the Mokalai, in a paper bag, with the promise that Bailey could have 25% of their value. There was also testimony regarding Bailey's intentional concealment of a business card containing the police number that pertained to the robbery from the post office of the $150,000 in bonds. Finally, the jury could have considered Bailey's statements that "he had gotten caught" and "had to pay the consequences."

Thus, we conclude that there was adequate evidence produced to permit the jury to find that Bailey had violated § 1708.

■ We also reject Bailey's contention regarding the Court's instruction on possession of recently stolen property. The recovery of the bonds occurred only two and one-half months after their theft. This Court held in *Altom v. United States,* 454 F.2d 289, 294 (7th Cir. 1972), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1765, 32 L.Ed.2d 116 (1973), that an inference may arise as much as fifteen months after a theft "that the possessor knew that the property had been stolen." The instruction on the inference was thus not improper.[3] Additionally, the district court correctly instructed the jury concerning the necessity that inferences be inconsistent with every reasonable hypothesis of innocence.

---

2. The government is required to prove that the defendant in a § 1708 prosecution had knowledge that the items were stolen, but it need not prove that he knew they were stolen from the mails. *Barnes v. United States,* 412 U.S. 837, 847, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

3. *Cf. Barnes v. United States,* 412 U.S. 837, 845 fn. 9, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

## III.

The second contention asserted by Bailey is that the trial court erred when it stated to the jury that "a defendant has the absolute right not to testify, and the jury must not draw a presumption of guilt or any inference against the defendant because he did not testify."

This Court has held that it is not erroneous to give an instruction, over the defendant's objection, that a presumption of guilt may not be drawn from his failure to testify.[4] The instruction given in the case at bar was approved verbatim by this Court in *United States v. Rimanich*, 422 F.2d 817, 818 (7th Cir. 1970), where the defendant alleged error by the trial court in instructing the jury as described above, over the defendant's objection. The Court noted that the instruction is thought to be helpful rather than prejudicial.

Accordingly, Bailey's second claim does not have merit.

## IV.

The trial court found as a fact that the police did not use a pretext in order to stop Bailey's car, but that there was a valid basis for stopping it, namely, that he was driving with a burnt out headlight. Also, the court concluded that there was a proper ground for removing the car to a garage or place of safety; Indiana law permits a police officer to protect an unattended vehicle by removing it from the roadway.[5]

Finally, there is no claim that the police officers were not in a lawful position when standing outside Bailey's automobile. Thus, Bailey's contention that the bonds were not in "plain view" comes down to the proposition that the officers could not legitimately peer through the open door of the car to see whether the objects on the floor were lottery tickets or bonds. There is no merit to this contention. *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), *cf. State v. Opperman*, 228 N.W.2d 152 (S.D.1975), *cert. granted,* —— U.S. ——, 96 S.Ct. 264, 46 L.Ed.2d 249 (1975).

## V.

For all of the reasons set forth, the judgment of the district court is affirmed.

---

4. *United States v. Wick*, 416 F.2d 61, 63 (7th Cir.) *cert. denied,* 396 U.S. 961, 90 S.Ct. 430, 24 L.Ed.2d 425 (1969); *United States v. Schwartz*, 398 F.2d 464, 469–70 (7th Cir. 1968); *cert. denied sub nom. Pyne v. United States*, 393 U.S. 1062, 89 S.Ct. 714, 21 L.Ed.2d 705 (1969); *see United States v. Slaton*, 430 F.2d 1109, 1111 (7th Cir. 1970) (dictum), *cert. denied*, 400 U.S. 997, 91 S.Ct. 475, 27 L.Ed.2d 448 (1971).

5. Burns Ind.Stat.Ann. § 9–4–1–113 (1973).