UNITED STATES of America, Plaintiff–Appellee,

v.

Wilbert LEWIS, Defendant–Appellant.

No. 89–1337.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1990.

Decided Aug. 14, 1990.

Thomas M. Durkin, Asst. U.S. Atty., Office of the U.S. Atty., Joan G. Fickinger, Asst. U.S. Atty., Office of the U.S. Atty., Cr. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Daniel L. Franks, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

Wilbert Lewis appeals his conviction and sentence for knowing possession of a firearm by a convicted felon in violation of 18 U.S.C.App. § 1202(a)(1).[1] Lewis contends that the trial court improperly refused to suppress certain government evidence, wrongly allowed prejudicial evidence of his gang membership to be presented to the jury, and improperly enhanced his sentence by considering improper and inaccurate information. We believe the trial court pro-

---

1. 18 U.S.C.App. § 1202(a)(1) was repealed May 19, 1986 by Pub.L. 99–308 and recodified at 18 U.S.C. § 922(g) and § 924(e). *See United States v. McGatha*, 891 F.2d 1520 (11th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 2188, 109 L.Ed.2d 516 (1990) (discussion of legislative history and changes in Armed Career Criminal Act). The effective date of repeal was 180 days after May 19, 1986, or November 15, 1986. Because the events in question occurred prior to this date, Lewis was properly charged under the earlier statute.

ceeded properly in each instance and, therefore, affirm.

## I.

The events in question took place in Chicago, Illinois, at around 10:00 pm on the evening of November 3, 1986. That night Wilbert Lewis was driving northbound on Francisco Street along with his brother Tyrone Lewis. Three Chicago police officers, Kriston Kato, Anthony Zdziarski and John O'Callaghan, were on patrol that evening in an unmarked squad car as part of a gang crimes unit. As the police car headed southbound on Francisco past Lexington Street, the officers saw the Lewis' car drive through a stop sign. The officers made a U-turn and followed the car as it headed north on Francisco past Flournoy Street. With the police in pursuit, Lewis drove through a second stop sign, turned right on Harrison Street, and then pulled over to the side.

As the officers approached the passenger side of the Lewis' car, Officer O'Callaghan saw what looked like a shotgun or rifle under the front seat. Searching the car, the police found a loaded sawed-off shotgun and a loaded .38 special caliber revolver, both under the front seat. Under questioning from Officer Kato, Lewis admitted that the car was his and that he did not have a driver's license. Both Lewis and his brother Tyrone were then arrested and read their *Miranda* rights.

The police issued two traffic citations to Lewis: one for his failure to stop at the intersection of Lexington and Francisco, a second for failing to stop at Francisco and Harrison. (There actually was no stop sign at Lexington and Francisco, but more on this later.) The rest of the case was referred to federal prosecutors for charges relating to the two firearms.

The Special May 1987 Grand Jury returned a one-count indictment against Wilbert Lewis on February 16, 1988, for knowing possession of firearms following conviction for a felony in violation of 18 U.S.C. App. § 1202(a)(1). The case was then set for trial before Judge James B. Zagel.

Prior to trial, Lewis moved for the suppression of the evidence gained from the search of his car, namely the two guns at issue. Lewis contended that because there was no stop sign at the corner of Lexington and Francisco, the stop by the police officers that evening was invalid. Therefore, Lewis argues, the warrantless search of the inside of his car was in violation of his rights under the fourth amendment. Following a hearing, Judge Zagel denied the motion. He noted that, although the citation for Lewis' failure to stop at Lexington and Francisco was in error, this did not end the matter. As Judge Zagel stated:

> I do believe there were stop sign violations at both Flournoy and Harrison.... Moreover, the fact that flashing lights are behind you does not excuse, as I read the state law, the failure to stop at a stop sign. In fact, the prescribed method for dealing with flashing lights behind you, as I understand the state rules of the road, is to pull as far over to the right as you can and stop.... I do find that the stop signs at Flournoy and Harrison were violated, and that gave reasonable grounds to make the traffic stop.

Following this denial of defendant's motion to suppress, a jury trial was held. At that trial, over defense counsel's objections, the government introduced evidence of Tyrone and Wilbert Lewis' gang membership. Lewis sought to suppress this evidence on the grounds that its prejudicial effect substantially outweighed its relevancy. The government, however, argued that the gang membership was central to demonstrating that the Lewis brothers were involved in a "joint venture" and thus both in possession of the firearms. Judge Zagel denied Lewis' motion to suppress and allowed the gang related information to be presented to the jury. On November 18, 1988, Lewis was found guilty and convicted of the offense charged.

The district court held a sentencing hearing on February 8, 1988. At that hearing, the government introduced evidence of Lewis' four prior convictions in order to trigger the enhancement provisions under 18 U.S.C.App. § 1202(a). These included a July 1978 conviction for burglary, a Decem-

ber 1977 robbery conviction, a December 1977 conviction for burglary, and a May 1987 conviction for armed robbery. The government presented the fingerprint and information cards taken from Lewis' March 1988 arrest and the fingerprint impressions from each of Lewis' prior convictions. A fingerprint expert then testified that impressions were for the same individual: Wilbert Lewis. An agent for the Bureau of Alcohol, Tobacco and Firearms, Tim Bartels, also testified that the documents for each of the four state court convictions were consistent with Lewis' criminal history as recorded by the Chicago police department. The government did not present, however, any witnesses with personal knowledge of Lewis' prior convictions.

Judge Zagel found that, despite the unusual nature of the evidence, the government had met its burden of producing sufficient material to prove Lewis' prior convictions by clear and convincing evidence. Judge Zagel acknowledged that prior convictions were customarily demonstrated by witnesses with personal knowledge of the earlier cases. Here, however, the court was satisfied that the government's essentially uncontested evidence, although circumstantial, was accurate and dispositive. In reaching this conclusion, Judge Zagel also stated that he was relying in large measure on Lewis' *pro se* motion, filed prior to sentencing, requesting the suppression of his prior convictions because of constitutional errors in the trials. Judge Zagel stated that the motion signed by Lewis was an admission of these convictions and erased any doubt for the court about the accuracy of the government's circumstantial evidence. Thus, the court imposed the mandatory 15–year sentence required for repeat offenders under the enhancement provisions of § 1202(a).

## II.

On appeal, Lewis raises three issues. First, he contends that the district court improperly refused to suppress the evidence gained from the search of his car. Second, he contends that prejudicial evidence of his membership in a Chicago street gang was wrongly presented to the jury. And finally, he argues that the government failed to demonstrate his prior convictions by clear and convincing evidence and therefore the enhancement provisions were improperly applied to his sentence. We will consider each of these issues in turn.

## A.

The fourth amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. This guarantee, however, does not preclude all searches and seizures, but only those that are unreasonable. *Elkins v. United States,* 364 U.S. 206, 213, 80 S.Ct. 1437, 1441, 4 L.Ed.2d 1669 (1960); *see also United States v. Denney,* 771 F.2d 318, 320 (7th Cir.1985). In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court approved the use of brief investigative stops by police officers provided the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880. *See also United States v. Ocampo,* 890 F.2d 1363, 1368 (7th Cir.1989). The detention of a motor vehicle for a traffic violation constitutes this type of permissible intrusion based on a reasonable suspicion. As the Tenth Circuit has stated:

> To stop a motor vehicle, one must have "at least articulable and reasonable suspicion that ... either the vehicle or an occupant is ... subject to seizure for violation of the law." *Delaware v. Prouse,* 440 U.S. 648, 663 [99 S.Ct. 1391, 1401, 59 L.Ed.2d 660] (1979). Thus, a traffic detention will certainly be justified if *probable cause* for the seizure does in fact exist, whether or not a traffic court does or would find the person guilty of the alleged infraction.
> *Cf. United States v. Recalde,* 761 F.2d 1448, 1454 (10th Cir.1985).

*United States v. Neu,* 879 F.2d 805, 808 (10th Cir.1989) (emphasis in original).

Lewis contends, however, that because there was no stop sign at the corner of Lexington and Francisco, as his traffic citation erroneously indicated, there was no reasonable basis for the traffic stop. Thus, he argues, any evidence discovered after this stop, namely the two firearms, should have been excluded from his trial as the product of violations of his rights under the fourth amendment. We do not agree with his characterization of the events.

At the suppression hearing, Judge Zagel determined that although Lewis' traffic citation was in error, there was no doubt that Lewis had run a stop sign. Thus, he ruled, the stop was valid. In reviewing this determination, we note that we will not overturn the district court's findings of fact following a suppression hearing unless those findings are clearly erroneous. *See United States v. Barnes*, 909 F.2d 1059, 1066 (7th Cir.1990); *see also United States v. Colonia*, 870 F.2d 1319 (7th Cir.1989). Here, no such showing can be made.

There was ample evidence that Wilbert Lewis blew a stop sign. Although there was no stop sign at Francisco and Lexington, there are signs at the corners of both Francisco and Flournoy and Francisco and Harrison. The stop sign at the Flournoy intersection, according to Judge Zagel, could have been the intersection that the officers thought was Francisco and Lexington. Moreover, when the officers turned the police car around, Lewis continued without stopping through the intersection of Harrison and Francisco. This was a violation as well. This second violation is undisputed. Once either of these violations

occurred, the police were allowed to stop Lewis' vehicle. Three experienced police officers testified that they saw Lewis' car run two stop signs. Thus, a reasonable suspicion existed, strong enough to support a *Terry* stop. The fact that the citation named the wrong intersection does not erase this suspicion, nor can it render the stop improper.[2]

To buttress his argument, however, Lewis suggests that the stop was merely a pretext for extracting gang information from him and his brother. Officer Kato had arrested Tyrone Lewis in 1984, and Lewis, although he never states so directly nor cites any cases for support, seems to indicate that due to this prior relationship, Kato sought out the Lewis brothers and pulled them over in order to discuss gang activities. An otherwise valid search of an automobile will violate the fourth amendment if the grounds for the underlying stop or arrest are merely a pretext for the search itself. *See United States v. Lefkowitz*, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932); *United States v. Hope*, 906 F.2d 254 (7th Cir.1990). Here, however, no pretext has been shown. Officer Kato testified that he did not remember Tyrone Lewis. Given that the arrest had occurred over two years earlier, this is not surprising. Beyond this, it is difficult to believe that even if Officer Kato was familiar with Tyrone Lewis he could identify him at night, driving in the opposite direction, while Tyrone was in the passenger seat of the oncoming car. Judge Zagel properly ignored the implication that the stop of the Lewis' car was pretextual.

2. Significantly, Lewis does not challenge the search as invalid, only the initial stop of his vehicle. The investigation which uncovered the revolver and the sawed-off shotgun under Lewis' front seat was permissible. Under *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), police officers are permitted to search any area within the immediate control of a suspect in order to ensure their own safety. This area of control even includes closed containers inside the passenger section of a vehicle. *United States v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Such a protective search of a car may even occur once the suspect has been removed from the vehicle. *Michigan*

*v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1984). Alternatively, police officers may seize weapons in plain view provided there is an extraneous, valid reason for the officer's presence. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). *See also United States v. Bailey*, 526 F.2d 139, 142 (7th Cir.1975). According to Officer Kato's testimony, the shotgun was visible through the window of the car and therefore could be seized. Once the shotgun had been detected, probable cause then existed for a complete search of the vehicle which would reveal the revolver as well. Under either rationale, the officers' actions were proper and justifiable.

### B.

Lewis' second contention is that the district court improperly allowed evidence of his membership in a Chicago street gang to be presented to the jury. While Lewis does not state so directly, it appears that he bases his objection on Federal Rule of Evidence 403:

> Although relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403. Lewis contends that any probative value of the evidence is substantially outweighed by the danger of unfair prejudice. In raising such a claim on appeal, Lewis faces a heavy burden. Evidentiary rulings are made at the discretion of the trial judge and will be overturned only upon *"a clear abuse of that discretion." United States v. Mazzanti,* 888 F.2d 1165, 1169 (7th Cir.1989) (emphasis in original). *See also Jones v. Hamelman,* 869 F.2d 1023, 1027 (7th Cir.1989).

During direct examination by the prosecution, Officer Kato testified that Tyrone Lewis had told him that the guns discovered in the car were protection against the Disciples, a rival street gang. There is also evidence in the record that both Tyrone and Wilbert Lewis admitted membership in the Travelling Vice Lords gang and that Tyrone bore tattoos apparently from the Vice Lords. The government contends that this information was necessary to establish a joint venture between Tyrone and Wilbert, and, thus demonstrate Wilbert's constructive ownership of the firearms. Significantly, Lewis does not challenge the relevancy of this evidence. Lewis concedes that demonstration of such a joint venture was an element of the government's case. Instead, Lewis merely argues that ample evidence was offered to establish the joint venture without resorting to references to his gang membership. Specifically, Lewis points to the fact that Tyrone was his brother, that they were both in the car together when the guns were found and that they stated that the guns were for protection.

Despite Lewis' contentions we believe the district court did not abuse its discretion by admitting the evidence of Lewis' gang membership. We have long recognized that gang membership has probative value under appropriate circumstances. *See United States ex rel. Hairston v. Warden,* 597 F.2d 604 (7th Cir.1979) (relation between gang activity and motive for murder sufficient to withstand claim of prejudice under Fed.R.Evid. 403); *Clark v. O'Leary,* 852 F.2d 999 (7th Cir.1988) (witness' membership in rival gang admissible for purposes of impeachment to show bias); *United States ex rel. Garcia v. Lane,* 698 F.2d 900 (7th Cir.1983) (gang membership of defendant admissible to explain earlier inconsistent statement of witness due to fear of retaliation). Further, the Supreme Court in *United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), approved the admission of evidence of gang membership where it had probative value: "membership in the prison gang was sufficiently probative of ... possible bias towards respondent to warrant its admission into evidence." *Id.* at 49, 105 S.Ct. at 467.

Here, the evidence of gang membership was directly relevant to the government's joint venture argument. The hostility between the Disciples and the Travelling Vice Lords explained the actions of Lewis and the presence of the guns in the car. The evidence was probative of the issue of constructive ownership, the cornerstone of the government's case under § 1202(a). We do not pretend that the fact that Lewis belonged to the Travelling Vice Lords street gang was not damaging to him in the eyes of the jury. Most street gangs suffer from poor public relations. Our standard under Rule 403, however, is whether the danger of prejudice *substantially outweighs* the probative value of the relevant evidence. It did not. The district court was well within its considerable discretion in admitting the evidence of Lewis' gang membership for purposes of establishing a joint venture between Tyrone and Wilbert Lewis.

### C.

Finally, Lewis claims that, because the government failed to prove his prior convictions by clear and convincing evidence, his sentence was improperly enhanced. The former 18 U.S.C.App. § 1202(a)(1) provides in relevant part: "a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court ... for burglary or robbery, or both, ... shall be fined not more than $25,000 and imprisoned not less than fifteen years[.]" The government introduced evidence at the sentencing proceeding that Lewis had four previous convictions for burglary and robbery, thus qualifying him for the enhancement provision. These convictions were proven by demonstrating that the fingerprints taken from Lewis after his arrest matched those prints taken from his official prison records for the earlier convictions. The government did not present any witnesses with personal knowledge of the earlier convictions.

In ruling that sufficient evidence had been presented to support the sentence enhancement, Judge Zagel admitted that he was basing his decision in part on the *pro se* motion to suppress the convictions offered by Lewis himself. In this motion, Lewis argued that his earlier trials were unconstitutional for a myriad of reasons and, therefore, should not be considered by the court during the sentencing proceedings. Judge Zagel stated that this motion basically admitted the prior robbery and burglary convictions, making him less concerned by the government's failure to present witnesses with personal knowledge of the proceedings.

■ At the outset, we note that our standard of review of a district court's sentencing decision is an extremely narrow one. We will not reverse a sentence within the statutory limits unless the court based that sentence upon improper considerations or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence. *United States v. Ford*, 840 F.2d 460, 466 (7th Cir. 1988). The central concern of a sentencing

court must be determining the accuracy of the information before it. As this court has noted, "One major purpose of a sentencing hearing is to allow the sentencing judge to determine what information is or is not reliable enough to consider in sentencing." *United States v. Agyemang*, 876 F.2d 1264, 1270 (7th Cir.1989). Because of this quest for accuracy, a sentencing court may consider a wide variety of information, including hearsay, which would be inadmissible in other proceedings. *Id.* at 1270; *see also United States v. Nowicki*, 870 F.2d 405, 406–07 (7th Cir.1989); *Williams v. New York*, 337 U.S. 241, 250–51, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 1337 (1949).

■ Under this standard, the evidence of Lewis' prior convictions, the fingerprints and prison records, were proper material for a sentencing proceeding. Evidence of this sort is an acceptable, often necessary, element of a sentencing proceeding. Otherwise, "given the breadth of information properly allowable at a sentencing hearing, not allowing the court to consider hearsay could turn the sentencing hearing 'into an endless parade of witnesses.'" *Agyemang*, 876 F.2d at 1271 (quoting *United States v. Harris*, 558 F.2d 366, 377 (7th Cir.1977). Further, not allowing hearsay and recorded evidence could produce unnecessary hardship for the prosecution where, as here, the predicate convictions occurred several years before the present charges. For instance, three of Lewis' convictions took place in 1977 and 1978, ten years before the current sentencing proceeding. Locating the people with personal knowledge of the trials is often not feasible or even possible. Thus, the proper concern is with accuracy of information.

Lewis was given ample opportunity to cross-examine the witnesses presented by the government and illustrate for the court the dangers of this hearsay testimony. The defense's vigorous cross-examination failed to accomplish this. Lewis' own *pro se* motion indicates why this may have been difficult. This motion dispels any doubt that the government's information was indeed correct. Lewis objects that the

government did not place this motion in evidence, but this is a ridiculous argument since it was the defendant himself who brought the information to Judge Zagel's attention. Having done so, he cannot avoid the obvious implications of his own motion.

The reliance on fingerprint records, prison mittimus, and Lewis' *pro se* motion may be unusual, but sentencing proceedings demand accuracy, not uniformity. For instance, in *United States v. Carter*, 801 F.2d 78 (2d Cir.1986), the court allowed the defendant's prior convictions under a § 1202(a) charge to be proven by a phone call from the sentencing judge to the judge who had presided over the defendant's earlier case. Here, the use of similarly untraditional means resulted in a fair and accurate decision. As we noted in *Agyemang*, "due process guarantees a fair sentencing hearing, not a perfect one." 876 F.2d at 1271. We believe the information before Judge Zagel at the sentencing hearing constituted clear and convincing proof of Lewis' earlier convictions for burglary and robbery. Therefore, we affirm the district court's imposition of the mandatory 15–year sentence.

### III.

Despite the issues raised by Wilbert Lewis on this appeal, we are not persuaded that error occurred either at his trial or in his sentencing hearing. First, Lewis committed at least one and possibly two traffic offenses in the presence of the arresting officers, justifying the stop of his vehicle and the subsequent discovery of the guns. Second, evidence of Lewis' membership in a Chicago street gang was relevant to the government's demonstration of a "joint venture" involving the Lewis brothers, and was not substantially outweighed by the danger of prejudice to Lewis. Finally, the information presented at the sentencing hearing to prove Lewis' predicate convictions, though unusual, was sufficiently accurate and reliable to justify the imposition of the enhanced sentencing provisions. Lewis' mandatory 15–year sentence was,

thus, properly imposed. Therefore, the decision of the district court is

AFFIRMED.