28 F.3d 1217
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raul M. ROSAS, Defendant-Appellant.
 No. 93-2383.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 10, 1994.
Decided July 19, 1994.
 
 Before POSNER, Chief Judge, and ESCHBACH and KANNE, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Raul M. Rosas of possession of a firearm by a felon, in violation of 18 U.S.C. Sec. 922(g). The district court sentenced him to 51 months imprisonment. Rosas now makes four arguments on appeal.
 
 
 2
 First, Rosas contends that the district court erred when it denied his motion to suppress evidence of the handgun found in his possession. Second, he urges that the evidence presented at trial was insufficient to support his conviction. Third, he asserts that the government's closing arguments were improper and prejudicial, thereby depriving him of a fair trial. Last, he challenges the constitutionality of section 3E1.1 of the federal sentencing guidelines. We disagree with Rosas on all these grounds and affirm his conviction and sentence.
 
 BACKGROUND
 
 3
 At approximately nine o'clock in the evening on January 17, 1992, Deputy Ed Jatkowski ordered Rosas to pull his truck over to the side of Wilhelm Road in Peoria County, Illinois. Jatkowski had just seen Rosas switch his headlights off before turning onto Wilhelm Road, then continue to drive in the dark. After Rosas had brought the truck to a stop, Deputy Jatkowski approached the truck and asked Rosas for his driver's license and proof of insurance. Upon returning to the squad car, Jatkowski ran a warrant check on Rosas and found no warrants outstanding. He began to write Rosas a traffic citation.
 
 
 4
 Within two minutes, Deputy Todd Foster arrived at the stop as a backup to Jatkowski. Deputy Foster walked up to the driver side of Jatkowski's squad car to inquire about the stop. From that position, Foster could look through the rear window of Rosas' pickup truck. The interior of the truck was illuminated by headlights, a spotlight, and the overhead emergency lights on Jatkowski's squad car. Foster saw Rosas place both hands behind his head, then move his left hand up toward an area above the driver side door, letting it linger there for a short period. Rosas then brought his hand back behind his head, lowered his hands, and looked in the rear-view mirror.
 
 
 5
 As a result of Rosas' suspicious movements, Foster called the shift lieutenant, who told him that Rosas had been convicted of murdering two migrant workers some years earlier. Foster and Jatkowski then determined that for safety reasons, both deputies should approach Rosas together. Foster went to the passenger side of the truck to make sure Rosas did not have access to a weapon. Jatkowski approached Rosas from the driver side, and asked him to step out of the truck. Rosas complied.
 
 
 6
 As Jatkowski and Rosas were conversing at the side of the truck, Foster shined his flashlight through the passenger side window onto the floorboard. There he saw an open bottle of beer. Next, he shined the flashlight toward the area of the truck above the driver side door. He noticed that the head liner had been removed from the roof of the cab, exposing a well or metal lip where the head liner had been. He then observed jutting from the well, the rear slide and hammer portion of a semi-automatic pistol.
 
 
 7
 Upon discovering the pistol, Foster walked around to the other side of the truck where Jatkowski and Rosas were standing, and asked them to step to the rear of the vehicle. Foster entered the cab of the truck and removed the bottle of beer. He then knelt on the seat and turned around to face the well above the driver side door. He removed the weapon and found that it was a .32 caliber semi-automatic handgun, loaded and cocked, with the safety off. Foster informed Jatkowski of the gun, and the deputies arrested Rosas.
 
 
 8
 At trial, Rosas maintained that he had no knowledge of the gun in his truck. Richard Sutton, a friend of Rosas, testified that he had borrowed Rosas' truck to go scavenging for automotive parts, and that he had found the gun in an abandoned car. He stated that he had placed the gun in the well above the door of Rosas' truck without Rosas' knowledge, and had forgotten to retrieve it when he returned the truck to Rosas.
 
 
 9
 Deputy Jatkowski, however, in addition to testifying to the circumstances of the traffic stop and arrest, testified that Rosas, while waiting for the prisoner transport van after the arrest, insisted that he "should not be charged with unlawful use of weapons by a felon because he had already served his time and that the gun was in the vehicle for his protection." The parties stipulated to the fact that Rosas had a prior felony conviction. The government also adduced evidence that the pistol had travelled in interstate commerce.
 
 
 10
 The jury returned a guilty verdict. At the sentencing hearing, the court found that Rosas had absconded while on bond, failed to appear in court when ordered, and provided materially false information to the court. It thus increased Rosas' base offense level by two points for obstruction of justice. Next, the court denied Rosas a two-point decrease for acceptance of responsibility. Having then determined that with a criminal history category III, Rosas' imprisonment range was 51 to 63 months, the court sentenced Rosas at the bottom of the authorized range, to 51 months in prison.
 
 ANALYSIS
 A. Motion to Suppress
 
 11
 Rosas contends that the district court erred when it denied his motion to suppress evidence of the pistol that Deputy Foster recovered from the truck. The district court articulated two grounds upon which it justified Foster's search: (1) the search was legitimate under Michigan v. Long, because the circumstances of Rosas' stop warranted a reasonable belief by the police that their safety was endangered; (2) the search was legitimate under the plain view doctrine.
 
 
 12
 Both of these grounds are correct, but we only need discuss one of them here. We review a district court's factual and legal determinations on a motion to suppress evidence for clear error. United States v. Rice, 995 F.2d 719, 722 (7th Cir.1993). A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. Id. (citations omitted).
 
 
 13
 The plain view doctrine is an exception to the warrant requirement which allows a police officer to conduct warrantless seizures of private possessions when (1) the officer has not violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the incriminating character of the evidence is "immediately apparent"; and (3) the officer has a lawful right of access to the object itself. Horton v. California, 496 U.S. 128, 142, 110 S.Ct. 2301, 2311 (1990). See also United States v. Wilson, 2 F.3d 226, 232 (7th Cir.1993).
 
 
 14
 Here, Deputy Jatkowski validly stopped Rosas' truck for driving after dark without headlights. It is uncontested that driving without headlights at night constitutes a traffic violation, which provides a reasonable ground for a police officer to stop a vehicle for the offense. See United States v. Lewis, 910 F.2d 1367, 1370-71 (7th Cir.1990) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968)). Once the officers had properly detained Rosas' truck, Deputy Foster was in a legitimate position to plainly view, through the passenger window, the pistol lodged in the well above the driver side door. Foster's use of a flashlight to illuminate the interior of the truck was also permissible. Texas v. Brown, 460 U.S. 730, 739-40, 103 S.Ct. 1535, 1542 (1983).
 
 
 15
 Next, the shift lieutenant had alerted Foster to the fact that Rosas was a convicted felon before Foster approached the truck. Hence, the incriminating character of the pistol in Rosas' truck would certainly have been immediately apparent to Foster, for both state and federal law prohibits felons from possessing firearms. Furthermore, because possession of a firearm by a felon is a crime, as soon as Foster detected the weapon, he also had probable cause to search the cab of Rosas' truck and to seize the pistol. See United States v. Cooper, 19 F.3d 1154, 1163 (7th Cir.1994).
 
 
 16
 Foster's seizure of the pistol was authorized by the plain view doctrine. Therefore, we conclude that the district court committed no error in denying Rosas' motion to suppress.
 
 B. Sufficiency of the Evidence
 
 17
 Rosas maintains that the government's evidence was insufficient to convict him of possession of a firearm by a felon. Specifically, Rosas argues only that the government failed to prove that he knowingly possessed the firearm.
 
 
 18
 It is well established that defendants who seek to have their convictions reversed on the basis of insufficient evidence carry a heavy burden, particularly when the facts turn upon credibility determinations. United States v. Saunders, 973 F.2d 1354, 1359 (7th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1026 (1993). Credibility determinations are for the jury to make, not this court. Id. "We must accept the evidence unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." Id. (citations omitted).
 
 
 19
 The government presented abundant evidence in this case that Rosas knowingly possessed the pistol recovered from his truck. None of the evidence is inconsistent or improbable. Initially, Deputy Foster witnessed Rosas fumbling around the area where the gun was eventually found. Foster then saw the pistol in plain view through the passenger side window. After Rosas was arrested and awaiting the prisoner transport vehicle, he told Deputy Jatkowski that he should not be charged with being a felon in possession of a firearm because he had already served his time for the felony, and only had the pistol in his truck for self-protection. From this evidence, a rational jury could easily have found that Rosas knowingly possessed the gun.
 
 
 20
 Rosas did present evidence that it was his friend Richard Sutton who placed the gun in the truck without his knowledge; however, the jury chose to believe the testimony of Deputies Jatkowski and Foster. It was not irrational for it to do so. We therefore conclude that there was sufficient evidence to convict Rosas.
 
 C. Prosecutorial Misconduct
 
 21
 On direct examination, Jatkowski testified that Rosas had admitted to possessing the gun by stating shortly after arrest that he had only kept the gun in his vehicle "for his protection." On cross-examination by defense counsel, Jatkowski divulged that his first written report of the incident, dated January 17, 1992, contained no mention of Rosas' admission to possessing the gun. Instead, Jatkowski wrote about the admission only in a second report, dated July 22, 1992. Jatkowski conceded that he wrote this second report at the behest of the government's attorney.
 
 
 22
 On redirect, the government elicited testimony from Jatkowski that he had independently recalled Rosas' admission, and that he had then informed the government's attorney of this recollection. The government went on to question Jatkowski as follows:
 
 
 23
 Q. And you wrote [the recollection] out in July of 1992 at my request, is that correct, put in a report form?
 
 
 24
 A. Yes.
 
 
 25
 Q. And that was to furnish to the defense lawyers so that they would know what your recollection was; isn't that correct?
 
 
 26
 A. That's correct.
 
 
 27
 During the jury instruction conference, the government asked the district court to give the jury an instruction regarding the government's ongoing duty to furnish discovery to the defense as it becomes known to the government. The court provisionally refused to give the government's instruction. It stated,
 
 
 28
 ... [A]t this point I think I will wait and hear closing arguments and see whether or not I think the defendant has, I think, improperly attempted to hide behind the legal obligation you have to disclose. And I don't see how the government is hurt by my waiting until I hear closing arguments.
 
 
 29
 I don't instruct the jury, of course, at this point you don't know what I'm going to tell them, I guess in that sense you don't, you won't be able to argue that the Court is going to give that instruction, but I think I will make a decision now, and then after closing arguments either one of you can then ask the Court to instruct the jury differently.
 
 
 30
 I am going to refuse the Government's exhibit No. 22, and after closing arguments, the government can always ask me to instruct on that basis.
 
 
 31
 In closing argument, however, the government declared:
 
 
 32
 [t]he defendant's oral statement was reduced to a written report in July of 1992. That was done because the government has an ongoing duty to inform the defendant of oral statements that the government is aware of, and once that oral statement was made known to the government, there was--
 
 
 33
 Defense counsel interrupted at this point with an objection and a motion to strike, which the court sustained and granted. The court ultimately never gave the jury instruction regarding the government's duty to furnish discovery.
 
 
 34
 Rosas moved for a new trial on the ground of prosecutorial misconduct, because the government had argued that the second report was created as part of its duty to defense counsel, despite the district court's ruling. The court denied Rosas' motion, stating that the prosecutor "might have overstepped a little bit, I don't think that was--I think it was minor and did not affect the trial, fairness of it." Rosa renews his argument on appeal.
 
 
 35
 When reviewing a prosecutorial misconduct claim, we first examine the challenged remark in isolation to determine whether it was proper. United States v. Van Wyhe, 965 F.2d 528, 533 (7th Cir.1992) (citing United States v. Spivey, 859 F.2d 461, 465 (7th Cir.1988)). If we conclude that the remark was improper, we then evaluate it in light of the entire record to determine whether it deprived defendants of a fair trial. Id. Strong evidence of guilt eases any lingering doubt that a remark unfairly prejudiced the jury's deliberation. Id.
 
 
 36
 We agree with the district court that the prosecutor's remark constituted overstepping, but that if the remark was improper, it was not sufficiently prejudicial to have deprived the defendant of due process. The government did not misrepresent to the jury that the court was going to give the rejected instruction; it mentioned only that the duty exists and that the second police report was made pursuant to it. Given the court's rejection of the proposed jury instruction and the dearth of evidence regarding whether the report was actually made in furtherance of the government's discovery obligations, however, the remark was probably better unmade.
 
 
 37
 We need not decide conclusively whether the remark was improper in this case, for if it was, the remark nevertheless did not constitute misconduct serious enough to taint the fairness of the trial. Defense counsel was still able to argue that the timing of Jatkowski's second report cast doubt on its veracity. Also, the court gave sufficient curative instructions by sustaining defense counsel's objection to the remark, ordering it stricken, and explaining to the jury that the stricken statement was an instruction of law, properly reserved for the court to give. Moreover, strong evidence of Rosas' guilt reinforces our conclusion that the prosecution's statements were harmless, and did not affect the fairness of the trial.
 
 D. Sentencing Guideline Section 3E1.1
 
 38
 Finally, Rosas argues that the sentencing guidelines' Acceptance of Responsibility adjustment, section 3E1.1, runs afoul of his Sixth Amendment right to a trial by jury.
 
 
 39
 Rosas argument is plainly without merit. This court has repeatedly held that section 3E1.1 is constitutional under the Sixth Amendment. See United States v. Tolson, 988 F.2d 1494, 1498-99 (7th Cir.1993) (rejecting Sixth Amendment challenge); United States v. Saunders, 973 F.2d 1354, 1362-63 (7th Cir.1992) (rejecting Fifth and Sixth Amendment challenges), cert. denied, --- U.S. ----, 113 S.Ct. 1026 (1993); United States v. Guadagno, 970 F.2d 214, 225-26 (7th Cir.1992) (Sixth Amendment).
 
 
 40
 Furthermore, in addition to putting the government to its burden of proof by withdrawing his guilty plea and electing to go to trial, Rosas has also belligerently denied responsibility at every stage of the proceedings in this case. Indeed, at his sentencing hearing, Rosas once again denied his guilt, and expressed resentment over getting caught. Thus, we conclude that the district court properly denied Rosas a reduction for acceptance of responsibility.
 
 CONCLUSION
 
 41
 For the foregoing reasons, Raul Rosas' conviction and sentence is AFFIRMED.