**UNITED STATES of America, Appellee,**

v.

**Jado KAMMOMA, Appellant.**

**No. 89–5177.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1989.

Decided June 22, 1990.

**1206**

Scott F. Tilsen, Minneapolis, Minn., for appellant.

Denise D. Reilly, Minneapolis, Minn., for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and McMILLAN,* District Judge.

WOLLMAN, Circuit Judge.

Jado Kammoma was found guilty by a jury of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). He was sentenced to thirty-three months' imprisonment on the bank robbery charge and to five years' imprisonment on the use of firearm charge, the sentences to run consecutively and to be followed by a three-year term of supervised release. Kammoma was also ordered to pay a special assessment of $100.00 pursuant to 18 U.S.C. § 3013. We affirm.

Late on the morning of October 4, 1988, a lone male approached Ms. Amy Ludtke at her teller window at the Norwest Bank on Nicollet Avenue in Minneapolis, Minnesota. The individual handed Ms. Ludtke a note which stated "I have a shotgun. Large bills. And don't make any noise." The robber then pulled a plastic drawstring bag from under his trousers and handed it to Ms. Ludtke. As he did so, Ms. Ludtke observed the wooden handle and the metal of a gun stuck in the robber's waistband. As Ms. Ludtke took the bag and started leaning towards her cash drawer the robber told her, "Nothing from the top drawer or I'll shoot you." Ms. Ludtke filled the bag with money (approximately $17,700.00) and gave it to the robber.

That same day, Kammoma went to the home of Shelly Thompson, a friend, and told her that he had robbed a bank. He gave her a plastic drawstring bag containing $17,000.00. Kammoma left the money with Ms. Thompson, who in turn took the money to a friend's house for safekeeping. Shortly thereafter, Kammoma began to demand that the money be returned to him. When it was not, he began leaving threatening notes with Ms. Thompson, who went

---

* The Honorable James B. McMillan, United States District Judge for the Western District of North Carolina, sitting by designation.

to the police on October 30, 1988. On November 4, 1988, agents of the Federal Bureau of Investigation arrested Kammoma. During a search of his home, the FBI agents found a coat and a pair of sneakers that appeared to be identical to those worn by the person who had taken the money from Ms. Ludtke.

Within a week of Kammoma's arrest, the FBI agents showed his photograph to Ms. Ludtke, who immediately identified Kammoma as the man who had robbed her. Ms. Ludtke also made a positive in-court identification of Kammoma.

The evidence established that a month before the robbery Kammoma had purchased a shotgun. Ms. Thompson testified that the stock of Kammoma's shotgun had been sawed off to make it into a pistol handle. Ms. Ludtke testified that the wooden stock that she observed in Kammoma's waistband was shaped like a large pistol grip. Because the shotgun was never recovered, the government introduced as an exhibit a gun stock from the same model as that purchased by Kammoma. The government also introduced the threatening notes written by Kammoma to Ms. Thompson after he began to demand the return of the robbery proceeds.

Kammoma contends that the district court[1] should have granted his motion for judgment of acquittal based upon his allegation that the evidence was insufficient to support the convictions on the two charges. We conclude that the foregoing recitation of the evidence is sufficient to refute this contention. A judgment of acquittal should be entered only when a reasonable jury must have had a doubt as to the defendant's guilt. *United States v. Bredell*, 884 F.2d 1081 (8th Cir.1989). Here, as the district court observed at the time of sentence, the evidence of Kammoma's guilt was overwhelming. Likewise, the testimony of the bank's security officer, accompanied by the bank's certificate and the semi-annual premium check, was sufficient to establish that the bank's deposits were insured by the Federal Deposit Insurance Corporation on the date of the robbery. *See, e.g., United States v. Mays*, 822 F.2d 793 (8th Cir.1987).

At Kammoma's request, the district court gave the jury an instruction concerning the evaluation of eye-witness identification testimony. The instruction, which was taken virtually verbatim from section 15.19 of 1 Devitt & Blackmar, *Federal Jury Practice and Instructions* (3d ed. 1977), stated that:

In appraising the identification testimony of a witness, you should consider the following:

1. Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had occasion to see or know the person in the past.

2. Are you satisfied that the identification made by the witness subsequent to the offense was the product of the witness' own recollection? You may take into account both the strength of the identification and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the Defendant was presented to the witness for identification, you should scrutinize the identification with great care.

You may also consider the length of time that lapsed between the occurrence of the crime *and the next opportunity of the witness to see the Defendant* as a factor bearing on the reliability of the identification.

3. Finally, you must consider the credibility of each identification witness in the same way as any other witness. Consider whether the witness is truthful, and consider whether the witness had the capacity and opportunity to make a reli-

---

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

able observation of the matter covered in the witness' testimony.

I again state that the burden of proof on the Government extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the Defendant as the perpetrator of the crime. If after examining the testimony if you have a reasonable doubt as to the accuracy of the identification, you must find the Defendant not guilty. (Emphasis added.)

Kammoma contends that the words "and the next opportunity of the witness to see the Defendant" had the effect of telling the jury that the district court had concluded that Ms. Ludtke had indeed seen Kammoma at the time of the robbery. Kammoma argues that the district court should have stricken the challenged language and substituted for it the words "and when the witness had an opportunity to see the defendant," as set forth in Kammoma's requested instruction.

The challenged language comes from the Model Identification Instruction set forth in *United States v. Telfaire,* 469 F.2d 552, 558–59 (D.C.Cir.1972), and implicitly approved by this court in *United States v. Greene,* 591 F.2d 471, 474–75 (8th Cir. 1979). When read in the context of the entire instruction, the challenged language reflects the reality that Ms. Ludtke had testified that the person who had taken the money from her was the same person she later identified from the photo array and during the trial. Although the language requested by Kammoma, or a variation thereof, might in the discretion of the district court be substituted for the language of the model instruction, the district court's refusal to give the requested instruction could not have been prejudicial to Kammoma in this case. As indicated earlier, the evidence against Kammoma was overwhelming, and his challenge to the instruction must therefore be rejected.

▅ Likewise, we reject Kammoma's challenge to the district court's admission of the gun stock and the threatening notes sent to Ms. Thompson. The gun stock tended to establish that the gun that Ms.

Ludtke saw was that which Kammoma had purchased one month before the robbery. The threatening notes were corroborative of Ms. Thompson's testimony that Kammoma had brought the proceeds of the crime to her home on the day of the robbery. Accordingly, the district court did not abuse its broad discretion under Rule 403 of the Federal Rules of Evidence by ruling that the probative value of the challenged evidence was not substantially outweighed by the danger of unfair prejudice. *United States v. Poston,* 727 F.2d 734, 739–40 (8th Cir.), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984).

Kammoma contends that the special assessment statute, 18 U.S.C. § 3013, is unconstitutional because it was enacted in violation of the origination clause of the United States Constitution. A similar contention was recently considered and rejected by the Supreme Court in *United States v. Munoz–Flores,* — U.S. —, — – —. 110 S.Ct. 1964, 1971–74, 109 L.Ed.2d 384 and therefore Kammoma's argument similarly must be rejected.

The judgment of conviction is affirmed.