UNITED STATES of America, Appellee,

v.

Derrell SPARKS, Appellant.

UNITED STATES of America, Appellee,

v.

Thomas McGHEE, Appellant.

Nos. 90–2854, 90–2855.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1991.

Decided Nov. 26, 1991.

Rehearing Denied Jan. 7, 1992.

Doris Gregory Black and Peter Stragand, St. Louis, Mo., argued (David O. Fischer, on brief), for appellant.

Sam Bertolet, St. Louis, Mo., argued (Steven E. Holthouser, on brief), for appellee.

Before McMILLIAN, FAGG and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Derrell Sparks and Thomas McGhee appeal from their convictions and sentences for possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1), conspiracy to possess a controlled substance with intent to distribute, 21 U.S.C. § 846, and use of a firearm in the course of a drug trafficking offense, 18 U.S.C. § 924(c). We affirm.

I.

Several St. Louis police officers were keeping a house at 1334 Semple under surveillance after a confidential informant told them that two persons would arrive there carrying drugs. A car appeared and two passengers, later identified as Sparks and McGhee, exited the vehicle. They conferred together and then approached the house. When the officers pulled up to the house, Sparks noticed their arrival, threw down a clear plastic bag, and yelled words to the effect of "Run! Police!" The police seized Sparks, who was found to be carrying a weapon and another clear plastic bag containing cocaine base. The cocaine base in the two bags totalled 54.63 grams.

After Sparks' warning, McGhee moved quickly toward the house and drew a gun

from his waist. An officer followed McGhee into the house and arrested him there. McGhee was carrying a beeper and one clear plastic bag containing 27.86 grams of cocaine base. The officer seized these items as well as the gun, which McGhee had dropped to the floor. The arresting officer testified that when McGhee was arrested he said something like "the guys [you] want ... are down-stairs rocking it up," and "I'm not gonna go to jail alone." Several officers then searched the basement and found guns. They also found 7.5 grams of cocaine base among the persons there, as well as personal snapshots depicting the basement and persons in it.

The officers noticed gang-related graffiti in the basement and called in Detective Terry James, who specialized in investigating gang activity. Detective James interviewed the defendants, then went to 1334 Semple and photographed the basement. Most of the graffiti on the walls was painted over, but the word "Bloods" still appeared in red paint on the basement door. Other items in the basement, such as a trash can, also bore graffiti.

Detective James seized the snapshots of the basement which the officers had found there. These snapshots revealed more elaborate graffiti on the basement walls and several people performing gang "hand signs." Sparks and McGhee did not appear in the pictures depicting the basement.

Sparks and other defense witnesses presented a different version of the events that evening. They testified that Sparks and McGhee were in the basement playing "dice" when the police arrived. They claimed that the police entered the basement, beat up several people, and subjected them to racial slurs.

During cross-examination, Sparks acknowledged that he had grown up in Los Angeles, where he knew McGhee. He identified a photograph of McGhee and himself, taken the night of their high school prom, in which both of them are

holding up dollar bills and McGhee is wearing a beeper on his hip. Sparks testified that he had flown back to Los Angeles four or five times since moving to St. Louis in 1988, that he had no regular job, and that he had supported himself in St. Louis by repairing friends' cars. Sparks stated that the evening of the arrest was the first time he and McGhee had been in the basement of 1334 Semple. Sparks also testified that he had talked with Detective James after his arrest, but that they had only discussed Sparks' claim that the police were fabricating a case against him.

The district court[1] did not allow any reference to the graffiti or other evidence of possible gang affiliation during the prosecution's case-in-chief. During cross-examination, the prosecution argued that the defense had opened the door to evidence of gang affiliation because Sparks had left the jury with the impression that he and McGhee were not associated in any way other than as casual friends. The prosecution argued that evidence of gang affiliation was also relevant to rebut Sparks' claim that he had never been to the basement before, as well as his claim that he and Detective James had only discussed Sparks' claim of fabrication, not gang affiliation. The district court agreed. When cross-examination resumed, Sparks denied ever having been a gang member and testified that he saw no graffiti anywhere in the basement the night of the arrest. Sparks conceded that Detective James had asked him whether he was a member of the Bloods gang, but maintained that he told Detective James "No."

In rebuttal, Detective James testified that Sparks admitted having been a member of the Inglewood Family Gangsters, a branch of the Bloods based in the neighborhood where Sparks grew up. Detective James also testified as an expert regarding the way gangs operate and the meaning of their graffiti and hand signs. Some of the graffiti in the basement, he stated, referred to the Inglewood Family Gangsters. He

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

testified that only Los Angeles natives could be members of the Bloods, and that Bloods members frequently migrated to the Midwest to recruit others to distribute drugs because prices in the Midwest are higher.

A jury found Sparks and McGhee guilty on all three charges. Each defendant was held responsible for 89.99 grams of cocaine base, which included the 54.63 grams of cocaine base found in Sparks' possession, the 27.86 grams found in McGhee's possession, plus the 7.5 grams seized from others in the basement. Each defendant was assigned an offense level of thirty-two because his conduct involved between 50 and 150 grams of cocaine base. *See* U.S.S.G. § 2D1.1(c)(6). Sparks' offense level was increased by two levels, to thirty-four, for obstructing justice by throwing down the bag of cocaine base and warning of the arrival of the police.

On appeal, Sparks and McGhee argue that the district court erred by admitting evidence of possible gang affiliation and by not severing their trials. They also argue that the evidence was insufficient to prove a conspiracy. Finally, Sparks argues that the cocaine base found on persons in the basement should neither have been admitted as evidence nor included in the amount for which he was sentenced, and that his actions in throwing down the cocaine and giving the warning do not warrant a two level increase for obstruction of justice.

## II.

■ Sparks and McGhee attack the admission of the photographs and snapshots of the basement, Detective James' testimony regarding his conversation with Sparks, and his expert testimony regarding gangs. First, they contend that all this evidence constitutes impeachment by extrinsic evidence on a collateral matter. *See Simmons, Inc. v. Pinkerton's, Inc.,* 762 F.2d 591 (7th Cir.1985).

The alleged gang affiliation of Sparks and McGhee is not collateral because it bears on the nature and extent of their association, which in turn bears on whether

they conspired. *See United States v. Lewis,* 910 F.2d 1367 (7th Cir.1990) (evidence of gang membership admissible to show joint venture). The collateral evidence rule therefore does not prohibit admission of this evidence.

■ Next, Sparks and McGhee attack the admission of gang affiliation evidence on the ground that its probative value was substantially outweighed by the danger of unfair prejudice. *See* Fed.R.Evid. 403. The district court has broad discretion when weighing probative value against unfair prejudice, and we will reverse its decision only if it abused its discretion. *United States v. Kammoma,* 905 F.2d 1205, 1208 (8th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990).

■ Sparks and McGhee presented evidence concerning their relationship, their connection to the basement, and police misconduct. We conclude that the danger of unfair prejudice from evidence suggesting gang affiliation did not substantially outweigh its probative value, because the evidence was necessary to rebut the defendants' version of events. The district court's decision did not, therefore, constitute an abuse of discretion. *See Lewis,* 910 F.2d at 1372.

■ Finally, Sparks and McGhee assert that the court erred in admitting Detective James' expert testimony. Expert testimony is admissible where it will assist the trier of fact. Fed.R.Evid. 702; *United States v. DeLuna,* 763 F.2d 897, 912 (8th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). A district court has broad discretion to admit or exclude expert testimony, and we will sustain that decision unless it was "manifestly erroneous." *United States v. Kandiel,* 865 F.2d 967, 971 (8th Cir.1989).

■ The district court properly admitted Detective James' expert testimony. Without that testimony, the jury probably could not have understood the meaning of the graffiti and hand signs depicted in the pictures, nor the potential significance of an admitted gang member moving from Los Angeles to a city in the Midwest.

## III.

■ Sparks and McGhee both challenge the district court's refusal to sever their trials. Sparks concedes that defendants charged with conspiracy should generally be tried together, *United States v. Lee*, 743 F.2d 1240 (8th Cir.1984), and that the decision to sever is within the discretion of the trial court, *United States v. Lewis*, 759 F.2d 1316 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). Nonetheless, he argues that his right of confrontation was violated because he was tried with a co-defendant who did not take the stand and whose out-of-court statements inculpated him. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Sparks apparently interprets *Bruton* to require severance whenever the prosecution introduces out-of-court statements by a co-defendant. *Bruton* is not so inclusive. Rather, it only addresses the introduction of statements by a defendant, such as a confession, which expressly implicate a co-defendant. *Richardson v. Marsh*, 481 U.S. 200, 208, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987). Since the prosecution introduced no statements by McGhee referring to Sparks, *Bruton* does not apply.

■ McGhee argues that the evidence of gang affiliation would not have been admissible against him had he been tried separately, and therefore the district court's failure to sever his trial from Sparks' caused prejudice to him. To prevail, McGhee must show that the "joint trial resulted in such prejudice that a reasonable jury would not have concluded the way it did" had he been tried separately. *Lewis*, 759 F.2d at 1341 (citation omitted).

McGhee has not shown the requisite degree of prejudice. It is not enough that evidence admissible against Sparks was not admissible against him. *United States v. Reeves*, 674 F.2d 739, 746 (8th Cir.1982). Moreover, our review of the record indicates that the evidence against the two defendants was such that a jury could "be expected to compartmentalize the evidence as it relate[d] to [each]." *Reeves*, 674 F.2d at 744. The district court therefore did not abuse its discretion in refusing to sever McGhee's trial.

## IV.

■ Next, we address the attack on the sufficiency of the evidence to prove a conspiracy, and note that:

[w]hen reviewing for sufficiency, we examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences. We reverse only if we conclude that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements.

*United States v. Ivey*, 915 F.2d 380, 383 (8th Cir.1990) (citations omitted).

■ To prevail on a charge of conspiracy, the government must prove that the defendants agreed to commit an illegal act. *United States v. Wajda*, 810 F.2d 754, 763 (8th Cir.), *cert. denied*, 481 U.S. 1040 (1987). The agreement need not be formal; a tacit understanding will suffice. *United States v. Hoelscher*, 914 F.2d 1527, 1534 (8th Cir.1990), *cert. denied*, ─── U.S. ───, 111 S.Ct. 2240, 114 L.Ed.2d 482 (1991); *Ivey*, 915 F.2d at 384. Moreover, the government may prove the agreement wholly by circumstantial evidence, *United States v. Schmidt*, 922 F.2d 1365, 1369 (8th Cir.1991), or by inference from the actions of the parties, *Wajda*, 810 F.2d at 763. Although not sufficient by itself, association or acquaintance among the defendants supports an inference of conspiracy. *Ivey*, 915 F.2d at 384.

■ The government cites a number of facts to support the conviction of Sparks and McGhee for conspiracy to possess cocaine base with intent to distribute. Sparks' and McGhee's arrival in the same car and their conferring before approaching the house indicate that they cooperated in their journey to the house. Sparks' warning upon the arrival of the police supports the inference that Sparks knew what McGhee was carrying, and that he wished to protect McGhee from arrest.

The defendants' apparent destination is also significant, particularly in light of Sparks' admitted gang membership. References in the graffiti to the Inglewood Family Gangsters, along with the expert testimony regarding the pattern of gang members leaving Los Angeles to recruit drug distributors in the Midwest, allow the inference that Sparks was going to the basement to distribute drugs as part of his gang's business. Sparks' lack of regular employment, and the fact that he could afford to fly to Los Angeles four or five times in approximately one year, further suggest that he may have been supporting himself in a way other than car repair. McGhee, on the other hand, knew there was cocaine base among the people in the basement. Since he was carrying a large quantity of cocaine base, the jury could reasonably have inferred he intended to distribute it there. All this, plus the fact that the bags of cocaine in their possession were similar and contained nearly identical amounts, implies that Sparks and McGhee divided the drugs between themselves and cooperated in transporting them to 1334 Semple.

On these facts, we cannot say that a reasonable fact-finder must have entertained a reasonable doubt as to whether Sparks and McGhee had at least a tacit understanding to cooperate in possessing drugs with the intent to distribute them.

## V.

■ Sparks argues that the district court erred by admitting as evidence the 7.5 grams of cocaine base found on persons in the basement, citing *United States v. Townley*, 929 F.2d 365 (8th Cir.1991). *Townley*, however, addressed what constitutes relevant conduct for sentencing purposes under U.S.S.G. section 1B1.3(a)(2), not whether certain evidence may be admitted for purposes of rebuttal. We conclude that the cocaine base seized from persons in the basement was properly admitted for the same reasons as were the evidence of gang affiliation and the police testimony concerning what they did in the basement.

Sparks also argues that, since he had no personal interest in nor responsibility for the cocaine base found on persons in the basement, that cocaine should not be included when calculating his offense level. *See Townley, supra.*

Sparks received an offense level of thirty-two, for possessing between 50 and 150 grams of cocaine base. Since the government proved that Sparks had 54.63 grams of cocaine base in his possession, his offense level remains the same whether or not the 7.5 grams of cocaine base found on persons in the basement is attributable to him. Accordingly, we need not address this argument. *United States v. Regan*, 940 F.2d 1134, 1136 (8th Cir.1991).

## VI.

■ Finally, Sparks challenges the two level increase he received for obstruction of justice. *See* U.S.S.G. § 3C1.1 (Nov.1990). Sparks maintains that the increase should not apply because his throwing down the cocaine base and warning of the arrival of the police did not materially hinder the investigation or prosecution of the case. *See id.* at comment. (n. 3(d)).

Sparks was sentenced on October 19, 1990. The sentencing guidelines and commentary in effect on that date did not require that a defendant's conduct result in a "material hindrance" in order for an obstruction increase to apply. *United States v. Dortch*, 923 F.2d 629, 632 n. 2 (8th Cir.1991). Sparks' argument therefore fails.

## VII.

The convictions and sentences are affirmed.