Christian, J.,
delivered the opinion of the court.
The whole subject matter of the controversy between the parties having perished, or been extinguished by the result of the late civil war, (the title to certain slaves being the sole question adjudicated by the court below,) it is not necessary that this court should pass upon the merits of the cause. The question now presented, only involves the costs of the proceedings, dependent upon questions of chancery practice and pleading, to be settled by this court. The record is quite voluminous; but I deem it necessary to extract from it only such facts as shall present, intelligibly, the points now to be decided by this court.
John Clarkson died in the year 1817, leaving a will, one clause of which is expressed in the following language:
“I give and bequeath unto my daughter, Betsey Taylor, and Major Abram Taylor, her husband, Mealey and her children, by them freely to be possessed and enjoyed; and if it so happen that the said Betsey Taylor ■ die, having no bodily heir, that she and Major Abram Taylor z's [are] to enjoy them during their life; but is [are] not to remove the said negroes out of this State; and, at their death, to be equally divided among the rest of my children.”
Abram Taylor qualified as one of the administrators, with the will annexed, of John Clarkson, and had the estate inventoried and appraised; but did not include Mealey and her children, or any of them, as a part of the testator’s estate. Abram Taylor died intestate, in the *44 year 1819 and his wife’ Betsey Taylor, qualified as one of Iris administrators.
There being no issue of the marriage of Abram and Betsey Taylor, his distributees were his father and his widow; and between them, there was a division of certain slaves, of which the said Abram died possessed. But in that division, the woman Mealey and her children were not disposed of; they were retained by Mrs. Taylor, under a claim of title in her.
Under executions against Mrs. Taylor a number of Mealey’s children were sold by John Wade, a sheriff' of Franklin county, who became, himself, the purchaser. Mrs. Taylor afterwards became involved in certain law suits, with the personal representatives of her husband's father; and in consideration of services rendered in those suits, transferred her right in the negroes that said Wade, deputy sheriff of Franklin county, held under his purchase, to Giles W. B. Hale—the transfer being for the benefit of himself and his brother John S. Hale. Mrs. Taylor died in 1849, without issue; and John S. Hale and G. W. B. Hale’s personal representative, brought an action of detinue against Wade, for the negroes; and in that suit a judgment was recovered, in 1853, for some eighteen or twenty slaves, the descendants of Mealey, held by Wade under his purchase. The slaves, thus recovered, were divided in January, 1854, between John S. Hale and Alexander B. Hutcheson, as personal representative of G. W. B. Hale.
In September, 1854, a suit in chancery was brought in the Circuit court of-Lynchburg, the bill being filed by the surviving children of John Clarkson, the testator, and the personal representatives of those who were dead, and certain grand-children of the testator, against John S Hale, Alexander B. Hutcheson, administrator of *45 Giles W. B.Hale, together with one Wm. Leftwich and one Moses G. Booth, who were also made defendants.
They exhibit with their bill the will of their John Clarkson, and insist that under the clause of his will' above quoted, disposing of the slave Mealey and her children, “Abraham Taylor and Betsey, his wife, took a conditional estate, in fee, or rather an absolute estate, in the negro woman Mealey and her children, defeasible upon her dying without issue living at her death; and in that event, the said negroes would go, to be equally divided, among the rest of the children of the testator;” and that upon the death of the said Abram and Betsey Taylor, the descendants of the woman Mealey passed to the children and grand-children of the testator. They aver that “ the children of the woman Mealey, and their descendants, are numerous; that they do not know the number, nor the ages, sexes, and names of all of them, nor in whose possession all of them are. They do know, however, that some are in the possession of John S. Hale and Alex. B. Hutcheson, administrator of Giles W. B. Hale; some are in possession of one Moses G. Booth, and some in the possession of one Wm. Leftwich.” And they call upon each one of the defendants to say what slaves, in his possession respectively, are descendants of the woman Mealey, the names, ages, and sexes of each slave, and by what claim of title they are held; and pray that the said slaves may be surrendered by the plaintiffs, and be sold by a decree of the court, and the proceeds distributed among those entitled.
The defendants demurred to the bill; and among other grounds of demurrer, insisted that the bill was multifarious. The cause was heard at the June term, 1856, upon the demurrer; and the following is an extract from the decree entered on that day: “And the *46 court is further opinion, that the bill is multifarious, in uniting the defendants, Moses G. Booth and ¥m. W. Leftwich, John S. Hale and Alexander B. Hutcheson, in . . the same suit, when it does not appear that the said defendailfo liad any common interest in the slaves sought to be recovered by the plaintiffs; and would now sustain the demurrer, if the plaintiff's had not asked leave to dismiss their bill, as to the defendants Booth and Left'wich. The court doth, therefore, adjudge order and decree, that the plaintiffs have leave to dismiss their bill, as to the defendants, Moses G. Booth and ¥m. ~W. Leftwich,” &c.; and decreed costs to the defendants. There were other grounds of demurrer, and other questions arose upon the pleadings, and upon a motion to send the case back to rules; which, in my view of the case; as it stands after the bill was dismissed as to the defendants, Booth and Leftwich, it is not necessary to notice.
Hale and Hutcheson (the bill being dismissed as to the others) are the only defendants against whom the plaintiffs claim the right to recover the slaves who were the children of Mealey, and their descendants. As against these two defendants, i|- is very questionable whether there was any sufficient allegation, even, to give the plaintiff's the right to sue in equity for the recovery of the slaves sought to be recovered of Hale aud Hutcheson.
The plaintiffs do not allege any ignorance of the names, sexes, or number of the slaves, the descendants of the woman Mealey, which were in the possession of these two defendants. They allege that they are ignorant of the number, names, ages and sex of all the descendants of Mealey. They say they know that some of them are in possession of Hale and Hutcheson; but they no where allege that they are ignorant of the names, number, age *47 and sex of these slaves. But, in calling upon the defendants, Hale and Hutcheson, for a discovery, the plaintiff's show that they knew in fact that a number of slaves had been received by the defendants, Hale and Hutcheson, of a certain John "Wade, in an action of detinue, tried in the Circuit court of Halifax, at the October term, 1863. As to these slaves, them number, names and sex, could be easily ascertained from the record of that ease, of which the plaintiff's in their bill show they were cognizant. To say the least, it is not clear that the allegations of the bill, if true, and not a mere pretence, are sufficient to entitle the plaintiff's to sue in equity, upon the ground of seeking a discovery. See Bass v. Bass, 4 Hen. and Mun. 478; Hardin’s executor v. Hardin, 2 Leigh 572; Parker’s administrator v. Parker, 5 Leigh 149; Armstrong v. Huntons, 1 Rob. R. 323. But however this may be, I think it very clear, that on the hearing of the cause the bill ought to have been dismissed, (if there was no other ground of equity jurisdiction than that of seeking a discovery,) because it then appeared, by conclusive record evidence, that the allegations of the bill on which it was sought to found the right to a discovery, and to relief in equity upon that ground, were mere colourable pretexts to establish the jurisdiction of the courts.
It is true, that if certain facts essential to a claim purely legal, be exclusively within the knowledge of the party against whom that claim is asserted, he may be required, in a court of chancery, to disclose those facts; and the court being thus rightly in the possession of the cause, will proceeed to determine the whole matter in controversy. But this rule cannot be abused by being employed as a mere pretext for bringing causes proper for a court of law into a court of equity.
If the answer of the defendant discloses nothing, and *48 the plaintiff supports his claim by evidence in his own . possession, unaided by the confessions of the defendants, the established rules, limiting the jurisdiction of courts, require that he should be dismissed from the C0U]rtchancery, and permitted to assert his rights in a court of law. Russel v. Clarke's ex'ors, 7 Cranch’s R. 69; Jones v. Bradshaw & als., 16 Gratt. 355.
In the case before us, the claim of the plaintiffs is not aided by any disclosures or confessions of the defendants in their answers; but is supported by evidence obtained by the plaintiffs, and easily accessible; for a most important part of it is obtained from the public records, and was well known to the plaintiffs. They had instituted, in the county of Franklin, their action of detinue against these same defendants, for the very same slaves named in the decree in this cause; and they were the identical slaves which the defendants in this suit had received of John‘"Wade. A comparison of the decree with the declaration in the one case and the judgment in the other, shows they are the same slaves. The record in the suit against "Wade, and the depositions of "Wade and Sam’l Hale, taken by the plaintiffs, show every fact which they call on the defendants, Hale and Hutcheson,to disclose; and conclusively show that their claim to call on them for a discovery was a mere colourable pretext to establish the jurisdiction of the court.
But it is said that the jurisdiction of a court of equity was properly invoked in this case, because the will of the testator was of doubtful construction, and the rights of the legatees under the will were uncertain. It is sufficient to remark, that this is not the case of an executor or other fiduciary' who, uncertain how to execute trusts under a will, comes into a court of equity, invoking its aid. to construe the will and advise him of his duties and obligations under it. Hor is it a suit by lega *49 tees, under a will for distribution of certain property ..... among them, according to their rights under a mil, which, they ask the court to construe; and which pro- . . • i , • , • perty is already m their possession; but it is a case where parties are seeking, in a court of equity, to recover certain slaves in the possession of an adverse claimant. How, tlie fact that the title to tlie property they are seeking to recover, arises out of a will, affords no ground for equity jurisdiction. A will may be construed by a court of law as well as a court of equity. It is done every day where tlie title of the plaintiffs, in an action of law, arises under a will. It was done with reference io this very will, the construction of which is sought in ihis suit; and that, too, by these same plaintiffs, in an action of detinue against one of the original defendants, Meses Booth. See Clarkson et. al. v. Booth, 17 Gratt. 490.
But it is further claimed, that a court of equity will take jurisdiction in this ease, to prevent a multiplicity of suits; because in this case the parties not only seek to recover the property held adversely by tlie defendants, but ask for a sale and distribution of that property among the various parties entitled thereto, according to tlieir respective rights. To bold that this would be a ground of equitable jurisdiction, in such a case, would be to declare that equity jurisdiction depended upon the number of plaintiffs; and that where there is a purely legal demand, if there be but one plaintiff, he cannot be entertained in a court of equity, but must bring Ms action at law; while in a claim of the same nature, if there be m rre than one plaintiff, and thei/ ask for a division of the property among them, after it is recovered of an adverse claimant, a court of equity upon that ground may take jurisdiction, though the claim be one purely legal, and the parties have a perfect remedy at law. This would be a total perversion of all those rules which plainly de *50 fine the boundaries of the two jurisdictions of courts of law and courts of chancery.
Upon the whole case, I think it is clear that the grounds of equity jurisdiction were colourable only, and that upon the hearing, the bill ought to have been dismissed. The decree ought to be reversed.
Decree reversed.