993 F.2d 229
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leverne MURPHY, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Emma J. Allen, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
James A. Butler, a/k/a Willie James Butler, a/k/a John
Thomas, a/k/a Grady, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Irene R. Hughes, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Sharon P. Mickle, Defendant-Appellant.
 Nos. 91-5416, 91-5422, 91-5423, 91-5428, 91-5446.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 1, 1992
Decided: April 27, 1993
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CR-91-44-R)
 Beth Mina Farber, Assistant Federal Public Defender, Federal Public Defender's Office, Baltimore, Maryland; Laura Lynne Wagner, Richmond, Virginia; Sa'ad El-Amin, Elamin & Crawford, P.C., Richmond, Virginia, for Appellants.
 Howard Crawford Vick, Jr., Assistant United States Attorney, Richmond, Virginia, for Appellee.
 Fred Warren Bennett, Federal Public Defender, Federal Public Defender's Office, Baltimore, Maryland, for Appellant Butler; John Adrian Gibney, Jr., Shuford, Rubin, Gibney & Dunn, Richmond, Virginia, for Appellant Murphy; Arnold Reginald Henderson, V, Wilder & Gregory, Richmond, Virginia, for Appellant Harris; Janipher Winkfield Robinson, Richmond, Virginia, for Appellant Mickle.
 Richard Cullen, United States Attorney, Terry T. Hughes, Third Year Law Intern, Danika A. Nystrom, Second Year Law Intern, Richmond, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED IN PART AND REMANDED IN PART.
 Before HALL, NIEMEYER, and WILLIAMS, Circuit Judges.
 WILLIAMS, Circuit Judge:
 
 OPINION
 
 1
 James Butler, Emma Allen, Sharon Mickle, and Leverne Murphy appeal their convictions for conspiracy to distribute more than five kilograms of cocaine. 21 U.S.C. §§ 841(a) & 846 (1988). These individuals, along with Irene Hughes, also appeal their convictions for conspiracy to defraud the United States by impeding the lawful function of the Internal Revenue Service in the collection of income taxes. 18 U.S.C. §§ 2 & 371 (1988). James Butler also contests his simultaneous convictions for conspiracy under 21 U.S.C.s 846, and engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1988). Butler's conviction and sentence for conspiracy to distribute cocaine is remanded to the district court with instructions to vacate. On all other issues, we affirm.
 
 I.
 
 2
 On May 22, 1991, a federal grand jury returned a twenty-seven count indictment against James A. Butler, James A. Anderson, Emma J. Allen, Sharon P. Mickle, Irene R. Hughes, Leverne Murphy, Thomas Harris, Kathy Tyler, and Burton Tillman.[1] Count One charged that the Defendants had unlawfully conspired since January 1983 to distribute and to possess with intent to distribute five or more kilograms of cocaine. Count Two charged that all Defendants, except Burton Tillman, had conspired to defraud the United States by evading federal currency reporting requirements and by concealing the nature, source, ownership, and control of the proceeds of the Defendants' drug activity. Counts Three through Twenty-Six charged the Defendants with various substantive offenses, including distributing and possessing cocaine, money laundering, structuring financial transactions to evade reporting requirements, and concealing the ownership of money and property. Finally, Count Twenty-Seven charged James Butler with engaging in a continuing criminal enterprise.
 
 
 3
 James Butler was found guilty on all counts. Emma Allen, Sharon Mickle, and Leverne Murphy were each found guilty of participating in both the conspiracy to distribute cocaine and the conspiracy to defraud the United States. Irene Hughes was found not guilty of participating in the drug conspiracy, but was found guilty of conspiracy to defraud the United States.
 
 
 4
 Each Appellant asserts several errors in the proceedings below. We have carefully considered each claim, and find that only three claims require discussion.[2] James Butler argues that the district court erroneously entered judgments of conviction on both Count One and Count Twenty-Seven. He argues that simultaneous convictions for engaging in a continuing criminal enterprise and a predicate conspiracy violate the protections of the Fifth Amendment's Double Jeopardy Clause. Because of the alleged error, Butler also contests the calculation of his sentence under § 3C1.1 of the United States Sentencing Guidelines. United States Sentencing Commission, Guidelines Manual, § 3C1.1 (Nov. 1990). He seeks resentencing.
 
 
 5
 Emma Allen challenges the district court's finding that she was a "manager or supervisor" of the cocaine and money laundering enterprises within the meaning of § 3B1.1(b) of the Sentencing Guidelines. Allen also seeks resentencing.
 
 
 6
 Finally, Irene Hughes argues that the evidence introduced at trial was insufficient to support her conviction under Count Two. She seeks a reversal of her conviction.
 
 
 7
 It is undisputed that James Butler organized and led an extensive and ongoing cocaine and money laundering enterprise in the Richmond, Virginia, metropolitan area. Butler was assisted, in varying degrees, by James E. Anderson, Raymond Hite, Emma J. Allen, Sharon P. Mickle, Irene R. Hughes, Leverne Murphy, D.J. Batts, Burton Tillman, Thomas Harris, Jesse J. Lindsey, Jr., Wayne D. Harris, David C. Lindsey, Everett Coleman, Daniel L. Flax, Donald E. Flax, Keith E. Ross, Edward D. Henderson, Jr., Landis Few, and Henry Earl Peay.
 
 
 8
 Butler's operation included the purchase of large quantities of cocaine and its distribution to in-house dealers and to other, largely independent operations. Certain subordinates, including Edward Henderson, Wayne Harris, and Landis Few, would travel alone or with Butler to New York and Florida to obtain cocaine in kilogram quantities. Butler would then supply kilogram quantities of cocaine to Daniel Flax, James Anderson and Edward Henderson. Henderson testified that over the course of the conspiracy he purchased six kilograms of cocaine from Butler at a cost of $500,000. Donald Flax testified that he and his brother Daniel[3] purchased at least fifty kilograms of cocaine and 100 pounds of marijuana from Butler, which they then sold to others. The Flax operation involved at least five other people and was capable of selling five to ten kilograms of cocaine per month. Butler exercised little supervisory authority over these operations.
 
 
 9
 Butler did, however, closely supervise his own drug distribution ring. Although several witnesses testified that they could purchase small quantities of cocaine directly from Butler, Butler's common practice was to use other individuals to distribute the cocaine for him.[4] Most frequently, Butler would instruct buyers to contact Emma Allen to obtain the cocaine. Butler accumulated over $2,000,000 in his cocaine dealings.
 
 
 10
 In order to conceal his substantial profits from the drug trade, Butler developed an extensive money laundering network. Butler ran his operation primarily out of his real estate and mortgage company, J & P Associates, Inc. Butler owned several other businesses, including J & P Grocery, J & P Laundromat, and Johnson & Jones Enterprises. Each of these businesses served as "fronts" through which Butler would launder money.[5]
 
 
 11
 Through J & P Associates, Butler controlled close to 200 properties. Butler employed both an accountant, Raymond Hite, and a bookkeeper, Kathy Tyler, as part of the operation. The company engaged in some legitimate real estate work. It managed several apartment complexes, processed the rental income they produced, and provided mortgage loans on other properties. Much of the company's work, however, involved criminal activity. Once Butler obtained cash proceeds from one of his distributors, he worked with Hite to falsify the financial records of various properties, including properties on Clay Street, Laburnum Avenue, Andover Road, and Boston Avenue. The records showed the receipt of phony down payments, rental payments, mortgage payments, or closing costs to hide the true source of the drug proceeds deposited in the bank.
 
 
 12
 Butler also laundered money through the purchase of new properties. To conceal his ownership of increasing numbers of properties, Butler purchased properties indirectly by soliciting other individuals to serve as nominal purchasers. Raymond Hite, Emma Allen, Sharon Mickle, Irene Hughes, and Leverne Murphy all agreed to and did serve as Butler's nominees. Although these individuals held legal title to the properties, they exercised no dominion and control over them, except at Butler's direction.[6] Consequently, no legal documentation reflected the true extent of Butler's holdings.
 
 
 13
 Because Butler's real estate deals involved large cash transactions, Butler structured them to avoid federal reporting requirements for currency transactions. Under regulations promulgated by the Secretary of the Treasury, any person who transfers more than $10,000 in currency must file a currency transaction report. 31 C.F.R. § 103.22 (1992). Because his real estate transactions often involved sums greater than $10,000, Butler purchased properties with two or more cashier's checks, each in an amount less than $10,000. Structuring a financial transaction so as to avoid the currency reporting requirements, as Butler's scheme did, is a criminal offense. 31 U.S.C. §§ 5322(b) & 5324(3) (1988); 18 U.S.C. § 1956(a)(1)(B)(ii) (1988); 31 C.F.R. §§ 103.53(c) & 103.11(p) (1992).
 
 II.
 
 14
 Butler contends that the district court violated his rights under the Double Jeopardy Clause of the Fifth Amendment when it entered judgment both on his conviction for conspiracy and on his conviction for engaging in a continuing criminal enterprise. He also seeks resentencing.[7]
 
 
 15
 The Double Jeopardy Clause secures a criminal defendant three distinct protections. It shields him from
 
 
 16
 a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.
 
 
 17
 Martin v. Taylor, 857 F.2d 958, 959 (4th Cir. 1988) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). Butler's argument focuses on the Fifth Amendment's protection against multiple punishments for the "same offense."[8] Butler asserts that his conviction under Count One, conspiracy to distribute cocaine under 21 U.S.C. § 846, should be vacated because it involved the same conduct as, or is a "lesser included offense" of, Count Twenty-Seven, engaging in a continuing criminal enterprise under 21 U.S.C. § 848.[9] Count TwentySeven of the Indictment specifically referenced as a predicate element Butler's involvement in the § 846 drug conspiracy charged in Count One.[10] Butler argues that the entry of a judgment of conviction on both counts therefore amounts to double jeopardy.
 
 
 18
 The traditional test for determining whether or not two offenses are the "same offense" for Double Jeopardy purposes was outlined in Blockburger v. United States, 284 U.S. 299, 304 (1932):
 
 
 19
 [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.
 
 
 20
 If, however, the proof of one offense necessarily establishes each element of another offense, the latter is a lesser included offense of the former. Brown v. Ohio, 432 U.S. 161, 168 (1977). "The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it," id., and cumulative punishments for the offenses are prohibited, id. at 166.
 
 
 21
 In Jeffers v. United States, 432 U.S. 137, 150 (1977) (plurality opinion), the Court addressed the question of whether §§ 846 and 848 constitute the same offense. After a careful analysis of the statutory elements and legislative history of the two offenses, the Court declined to decide the issue, but nonetheless assumed that " § 846 is a lesser included offense of § 848, becauses 848 requires proof of every fact necessary to show a violation under § 846 as well as proof of several additional elements." Id. Taken together, Brown and Jeffers would seem to support Butler's argument that he may not receive cumulative punishments for both continuing criminal enterprise and its predicate conspiracy.
 
 
 22
 More recently, however, the Court cautioned against applying Brown 's lesser included offense principles to the sort of "multilayered" conduct involved in ongoing crimes such as continuing criminal enterprise. Garrett v. United States, 471 U.S. 773, 789 (1985); see also United States v. Felix, 112 S. Ct. 1377, 1385 (1992) (reaffirming cautious application of lesser included offense principles to multilayered conduct). In line with Garrett 's caution, we have declined to extend Brown to bar a prosecution for continuing criminal enterprise after a previous conviction for a predicate conspiracy. United States v. McHan, 966 F.2d 134, 141 (4th Cir. 1992). We held that where a § 846 conspiracy constitutes"merely one short part of the conduct constituting the continuing criminal enterprise," the defendant may nonetheless be prosecuted and punished for the much broader § 848 continuing criminal enterprise. Id. at 141. In such a situation, it is difficult to conclude that the conspiracy constitutes the "same offense" as the multilayered continuing criminal enterprise. We did, however, reserve the question of whether as 848 continuing criminal enterprise that involved the " 'identical agreement and transactions over the identical time period' " as as 846 conspiracy would constitute the "same offense" as that conspiracy. Id. (quoting Jeffers, 432 U.S. at 150 n.16).
 
 
 23
 In this case, we need not decide whether the conspiracy of which Butler was convicted was a lesser included offense of his continuing criminal enterprise, for it is abundantly clear from the record that they are in fact the "same offense." McHan suggests that we look to the particular charges against the defendant to determine whether a conspiracy constitutes the same offense as a continuing criminal enterprise. 966 F.2d at 141. The Indictment alleged that both Butler's continuing criminal enterprise and his conspiracy covered the same time period, commencing on or about January 1, 1983, and continuing until the date of the Indictment. More significantly, the continuing criminal enterprise charge identified no drug offenses other than those identified in the Indictment;[11] the charge did nothing more than incorporate by reference the offenses previously identified in the Indictment.[12] Because the two offenses involved essentially "the identical agreement and transactions over the identical time period," Jeffers, 432 U.S. at 150 n.16, the continuing criminal enterprise and the conspiracy do in fact comprise the "same offense." Butler may therefore not be punished for both offenses. Id. at 155.
 
 
 24
 We must next determine the appropriate remedy that will prevent multiple punishments. To date, the Fourth Circuit has not applied a consistent remedy. See United States v. Butler, 885 F.2d 195, 202 (4th Cir. 1989) (vacating conspiracy convictions); United States v. West, 877 F.2d 281, 292 (4th Cir. 1989) (vacating concurrent conspiracy sentences), cert. denied, 493 U.S. 869 (1989), and cert. denied, 493 U.S. 959 (1989), and cert. denied, 493 U.S. 1070 (1990); United States v. Kosko, 870 F.2d 162, 162 n.1 (4th Cir.) (approving the district court's "merger" of the conspiracy count with the continuing criminal enterprise count), cert. denied, 491 U.S. 909 (1989); United States v. Porter, 821 F.2d 968, 978 (4th Cir. 1987) (setting aside concurrent conspiracy sentences), cert. denied, 485 U.S. 934 (1988); United States v. Love, 767 F.2d 1052, 1055 n.5 (4th Cir. 1985) (noting that district court imposed no sentences on conspiracy counts because of continuing criminal enterprise conviction, but affirming conspiracy convictions), cert. denied, 474 U.S. 1081 (1986); United States v. Raimondo, 721 F.2d 476, 477 (4th Cir. 1983) (vacating conspiracy convictions), cert. denied, 469 U.S. 837 (1984); United States v. Lurz, 666 F.2d 69, 81 (4th Cir. 1981) (reversing conspiracy convictions), cert. denied, 455 U.S. 1005 (1982), and cert. denied, 457 U.S. 1136 (1982), and cert. denied, 459 U.S. 843 (1982); United States v. Webster, 639 F.2d 174, 182 (4th Cir. 1981) (striking conspiracy conviction); see also United States v. Ricks, 776 F.2d 455, 462 (4th Cir. 1985) (dicta stating that separate convictions and sentences for §§ 846 and 848 could not be imposed), rehearing granted, en banc, 784 F.2d 544 (4th Cir.) (1986), adhered to, 802 F.2d 731, 732 (4th Cir. 1986) (en banc), cert. denied, 479 U.S. 1009 (1986); cf. United States v. Leifried, 732 F.2d 388, 389 (4th Cir. 1984) (vacating conviction for § 841 violation upon reasoning in Jeffers and Raimondo ). Our precedents have engendered confusion in the district courts. Herrera v. United States, 798 F. Supp. 295, 300 (E.D.N.C.) (Fourth Circuit has given mixed signals), aff'd mem., 960 F.2d 147 (4th Cir. 1992); United States v. Fuentes, 729 F. Supp. 487, 492 n.7 (E.D. Va. 1989) (conflicting results in Fourth Circuit), aff'd in part, remanded in part, No. 89-5157, 1990 U.S. App. LEXIS 19,956 at (4th Cir. November 9, 1990) (following Butler), cert. denied, 111 S. Ct. 1334 (1991).
 
 
 25
 Uniformity of remedy has not been established in other circuits. A substantial majority of the circuits, however, have concluded that the proper approach is to vacate both the convictions and sentences for any predicate conspiracy convictions. See United States v. Stallings, 810 F.2d 973, 975-76 (10th Cir. 1987) (listing cases); see also United States v. David, 940 F.2d 722, 738 (1st Cir. 1991), cert. denied, 112 S. Ct. 605 (1991), and cert. denied, 112 S. Ct. 908 (1992), and cert. denied, 112 S. Ct. 1298 (1992), and cert. denied, 112 S. Ct. 2301 (1992); United States v. Paulino, 935 F.2d 739, 751 (6th Cir. 1991), cert. denied, 112 S. Ct. 315 (1991), and cert. denied, 112 S. Ct. 323 (1991), and cert. denied, 112 S. Ct. 660 (1991), and cert. denied, 112 S. Ct. 883 (1992); United States v. Jones, 918 F.2d 909, 911 (11th Cir. 1990); United States v. Grubbs, 829 F.2d 18, 19 (8th Cir. 1987); but see United States v. Bafia, 949 F.2d 1465, 1473 (7th Cir. 1991) (approving concurrent sentences for conspiracy and continuing criminal enterprise), cert. denied, 112 S. Ct. 1989 (1992). The evolution of practice in the Ninth Circuit is instructive. Before the Supreme Court's decision in Ball v. United States, 470 U.S. 856, 864-65 (1985), the Ninth Circuit felt obligated to vacate only the sentences of § 846 conspiracies. United States v. Burt, 765 F.2d 1364, 1368 (9th Cir. 1985). Ball held that when cumulative punishments for two statutory offenses are prohibited, the only remedy is for the district court "to vacate one of the underlying convictions." Ball, 470 U.S. at 864.[13] Following recognition of the decision in Ball, the Ninth Circuit reversed its practice and determined that double jeopardy principles required vacating predicate conspiracy convictions as well. United States v. Hernandez-Escarsega, 886 F.2d 1560, 1582 (9th Cir. 1989), cert. denied, 497 U.S. 1003 (1990); see also United States v. Medina, 940 F.2d 1247, 1253 (9th Cir. 1991) (following Hernandez- Escarsega). Finding the majority approach persuasive, we remand to the district court with instructions to vacate Butler's conviction under § 846 for conspiracy to distribute cocaine and his resulting sentence.[14]
 
 
 26
 Butler argues that vacating his conviction under Count One requires resentencing. At sentencing, the district court calculated Butler's sentences as follows. For Count One (which we remand for vacatur), the district court determined that the conspiracy involved at least sixty-seven kilograms of cocaine, and therefore assigned Butler a base offense level of thirty-six under §§ 2D1.1(a)(3) and (c)(4) of the Guidelines. The court then added four points for Butler's role as an organizer or leader of the criminal activity under § 3B1.1(a), and added an additional two points for obstruction of justice under § 3C1.1, to arrive at a total adjusted offense level of forty-two.[15] For Count Twenty-Seven (the continuing criminal enterprise conviction which stands), the court assigned a base offense level of thirty-eight pursuant to § 2D1.5(a)(2), and added two points for obstruction of justice, again under § 3C1.1, to arrive at a total adjusted offense level of forty.[16] Applying § 3D1.2(d) of the Guidelines, the district court grouped both counts along with Butler's convictions on Counts Four, Seven, and Eight. The offense level applicable to that group is forty-two under § 3D1.3(b). After merging the remaining counts of conviction for money laundering into a second group, having a total adjusted offense level of thirty-five, the court determined under § 3D1.4 that the combined adjusted offense level was forty-three.[17]
 
 
 27
 According to Butler, if his conviction and sentence for conspiracy is vacated, his adjusted offense level for the group of drug offenses should be forty instead of forty-two. Butler argues that without the conspiracy count, the offense level for the continuing criminal enterprise (forty) is the "appropriate" level. Butler, however, was also convicted of substantive drug offenses in Counts Four, Seven, and Eight. The calculations for the adjusted offense level for these substantive counts are identical to those for the conspiracy count, each carrying an adjusted offense level of forty-two. Because these counts of conviction were grouped with Counts One and Twenty-Seven, vacatur of Butler's conspiracy conviction leaves the guideline calculations undisturbed. The group of drug offenses still carries an adjusted offense level of forty-two. Butler's combined adjusted offense level is forty-three, which carries a mandatory life sentence. Because the district court imposed a sentence of life imprisonment on Count Twenty-Seven pursuant to § 5G1.2(b), Butler's remaining sentences will not be disturbed.
 
 
 28
 Butler challenges his sentences on one other front. He contests the court's application of § 3C1.1 of the Guidelines, the obstruction of justice adjustment. Because Butler objected neither to the presentence report nor to the district court's finding that Butler obstructed justice, he did not preserve the issue for appeal. We do not find that the district court's application of the obstruction adjustment was plainly erroneous. We therefore affirm Butler's remaining sentences.
 
 III.
 
 29
 We next address Emma Allen's argument that the district court erred in finding that she was a manager or supervisor in both conspiracies under § 3B1.1(b) of the Guidelines.[18] We must uphold the findings of the district court unless they are clearly erroneous, and we must give due deference to the district court's application of the Guidelines to the facts. 18 U.S.C. § 3742(e) (1988); United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.), cert. denied, 111 S. Ct. 112, and cert. denied, 111 S. Ct. 432 (1990).
 
 
 30
 At Allen's sentencing hearing, the district court made the following findings of fact:
 
 
 31
 The court finds that Ms. Allen was a major distributor for Butler in the Richmond metropolitan area, and that she was intimately involved in the enterprise's program of purchasing assets with the currency derived from the drug trade in such a way as to avoid detection by law enforcement authorities and to hide the true ownership of the various assets.
 
 
 32
 This was an extensive criminal enterprise. The drug distribution enterprise involved, among others, James A. Butler, Leverne Murphy, D.J. Batts, Pete Anderson, and George Robinson. The money laundering conspiracy involved, among others, the defendant James Butler, James Anderson, Sharon Mickle, and Irene Hughes.
 
 
 33
 As such, she was a manager or a supervisor of the cocaine and money laundering enterprises within the meaning of section 3B1.1(b) of the Sentencing Guidelines and is subject to a 3 level increase for an aggravating role in counts 1 and 2.
 
 
 34
 (J.A. at 2103.) The background commentary to § 3B1.1 states that it "provides a range of adjustments to increase[a defendant's] offense level based upon the size of a criminal organization ... and the degree to which the defendant was responsible for committing the offense." U.S.S.G. § 3B1.1, comment. (backg'd.) Before a district court may impose a § 3B1.1 adjustment, it must engage in two separate factual inquiries. First, the district court must determine the size or scope of the criminal organization. Second, the district court must determine whether the defendant's role in the offense was that of an organizer, leader, manager, or supervisor. The harshest penalties are reserved for the organizers and leaders of criminal organizations involving five or more participants. U.S.S.G. § 3B1.1(a) (four level enhancement). Lesser adjustments are imposed on the managers and supervisors of large criminal enterprises, U.S.S.G.s 3B1.1(b) (three level enhancement), and the lightest adjustments are reserved for persons having any superior role in small criminal enterprises, U.S.S.G. § 3B1.1(c) (two level enhancement). Ordinary participants in any criminal enterprise receive no adjustment.
 
 
 35
 The district court explicitly found that both conspiracies involved five or more participants, and Allen does not dispute this finding. Rather, Allen disputes the district court's finding as to her particular role in the offense. Allen argues that, in order to find that an individual was a manager or supervisor, the district court must find that the individual exercised authority over other persons involved in the conspiracy. As authority, Allen cites United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir. 1990) (exercise of control over others necessary under § 3B1.1(c)), and United States v. Lanese, 890 F.2d 1284, 1293 (2d Cir. 1989) (no evidence of authority over others), cert. denied, 495 U.S. 947 (1990).[19] She argues that there is no evidence in the record that she supervised anyone. Although we agree that Allen did not supervise any of her co-conspirators, we disagree with her assertion that the district court must find that she supervised or managed people in order to enhance her sentence under § 3B1.1(b).
 
 
 36
 In United States v. Paz, 927 F.2d 176, 180 (4th Cir. 1991), we affirmed an upward adjustment of the defendant's sentence under § 3B1.1(b) based upon his management of property. In Paz, the defendant argued that his role was that of a courier, not a manager. Id. We affirmed the district court's finding that Paz was a manager because the "evidence indicated that Paz controlled the money, drug products and residences where the drug trafficking was performed." Id. We did not require the district court to find that the defendant supervised people. We think that, upon a proper showing, a defendant may receive a § 3B1.1(b) adjustment for the management of property.
 
 
 37
 This interpretation comports with the purpose ofs 3B1.1. The Sentencing Commission intended sentencing courts to impose harsher punishments on individuals having a role in the offense relatively more culpable than others. See U.S.S.G. ch. 3, pt. B, intro. comment.; U.S.S.G. § 3B1.1, comment. (backg'd.) ("The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility."). Courts should focus on relative responsibility, i.e. the defendant's role relative to the roles of the other offenders. Id.
 
 
 38
 Several of Allen's co-conspirators testified that when they needed cocaine, they could not obtain it from Butler, but were directed by Butler to obtain it from Allen. Allen served as the chief intermediary between the conspiracy's source of cocaine-Butler-and the conspiracy's street-level dealers-D. J. Batts, Pete Anderson, George Robinson, and Leverne Murphy.[20] Allen was entrusted with quantities of cocaine as large as a kilogram. Allen's drug sales generated substantial quantities of cash, which she brought to Ray Hite for laundering. Her profits from the drug operation were substantial: despite the fact that she had no other source of income, she was able to support five or six pieces of property. In light of this evidence, we cannot say that the district court clearly erred in finding that Allen was a manager or supervisor of the drug distribution conspiracy.
 
 
 39
 The evidence also supports the district court's finding that Allen managed or supervised substantial properties involved in the money laundering conspiracy. Allen was well educated and served as Butler's business partner on many transactions,[21] purchasing cashier's checks with drug proceeds and forging legal documents. She served as a nominal purchaser on at least six properties, more than most of her co-conspirators. Allen also handled large amounts of cash for Butler. There is evidence that she involved, without their knowledge, both Mabel James (her sister) and Rosie Rhodes (her mother), whose names were used as nominal purchasers for Butler. The district court's decision to enhance Allen's sentence by three levels pursuant to § 3B1.1(b) based on her role in the offense was not clearly erroneous.
 
 
 40
 Because the record supports the district court's findings, we affirm Allen's sentence.
 
 IV.
 
 41
 Finally, we consider the claims of Irene Hughes. Hughes claims the evidence was insufficient to support her conspiracy conviction. We must uphold Hughes's conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 
 42
 Hughes was convicted under Count Two of conspiracy to defraud the United States under 18 U.S.C. §§ 2 and 371. Count Two alleged a conspiracy to commit three particular offenses against the United States. First, Count Two alleged that Butler, Anderson, Allen, Mickle, Hughes, Murphy, Harris, and Tyler conspired to defraud the United States by impeding and obstructing the lawful function of the Internal Revenue Service to collect accurate data relating to currency transactions, in violation of 31 U.S.C. §§ 5313(a) and 5322(b) (1988). Second, Count Two alleged that those same individuals conspired to conduct financial transactions for the purpose of concealing and disguising the nature, source, ownership, location, and control of drug proceeds, and for the purpose of evading federal transaction reporting requirements, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (ii) (1988). Finally, Count Two alleged that these individuals knowingly and intentionally travelled in interstate commerce with the intent to promote, manage, establish, carry on, and facilitate the management, establishment, and carrying on of an unlawful activity. 18 U.S.C.A. § 1952(a)(3) (1988). If the evidence supports Hughes's conviction based on her involvement in any one of these three aspects of the conspiracy, we must affirm her conviction. See United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988) (defendant need not be involved in every aspect to be deemed a participant); United States v. Rapp, 871 F.2d 957, 965 (11th Cir.) (same), cert. denied, 493 U.S. 890 (1989).
 
 
 43
 Hughes argues that the Government focused on her service as a nominal purchaser for Butler's property and that the district court failed to instruct the jury on that issue. Specifically, Hughes contends that, in charging Count Two of the Indictment, the district court failed to instruct the jury that it could base a conviction on a defendant's participation in concealing the ownership of property under 18 U.S.C. § 1956(a)(1)(B)(i). She argues that the court limited its instructions to violations of the currency reporting requirements and travel in interstate commerce under 31 U.S.C. §§ 5313(a) and 5322(b) and under 18 U.S.C. § 1952(a)(3). Hughes argues that because there was "absolutely no evidence" from which the jury could have concluded that she knew about the reporting requirements or that she conspired to travel in interstate commerce with the intent to carry on unlawful activity, her conviction should be reversed.[22]
 
 
 44
 The Government argues that the evidence was sufficient to support Hughes's conviction for conspiracy either to conceal the ownership of property or to evade the currency reporting requirements. The Government does not argue that the facts would support Hughes's conviction for conspiracy to travel in interstate commerce with the intent to carry on an unlawful activity.
 
 
 45
 Even if we accept Hughes's interpretation of the jury charge, there is sufficient evidence to support her conviction for conspiracy to violate the currency reporting requirements. The record must show only that (1) a conspiracy existed; (2) Hughes had knowledge of the conspiracy; and (3) Hughes voluntarily became part of the conspiracy. United States v. Bell, 954 F.2d 232, 236 (4th Cir. 1992). The jury may consider acts in furtherance of the conspiracy as a factor in determining a defendant's participation in a conspiracy. United States v. Lignarolo, 770 F.2d 971, 978 n.9 (11th Cir. 1985), cert. denied, 476 U.S. 1105 (1986). The jury may also consider Hughes's close association with other conspirators; however, proof of association alone would be insufficient, without more, to sustain a conviction. United States v. Sparks, 949 F.2d 1023, 1027 (8th Cir. 1991), cert. denied, 112 S. Ct. 1987 (1992); United States v. Cannington, 729 F.2d 702, 709 (11th Cir. 1984).
 
 
 46
 The testimony of Raymond Hite provided sufficient evidence from which a rational jury could have found each element of the crime of conspiracy. There is no question that an extensive and on-going conspiracy existed between Butler and, among others, Ray Hite, Emma Allen and Sharon Mickle, to launder Butler's drug profits. Hite testified that virtually all of Butler's real estate transactions were designed to avoid the currency transaction reporting requirements. Hite also testified that Hughes knew about the reporting requirements, that she participated in many of the transactions, and that she purchased cashier's checks to facilitate the transactions. This evidence is sufficient to sustain her conviction.[23]
 
 V.
 
 47
 In conclusion, we remand Butler's conviction and sentence for conspiracy to distribute cocaine under 21 U.S.C. § 846 to the district court with instructions to vacate. We affirm Butler's remaining sentences. We affirm the district court's finding that Allen was a manager or supervisor within the meaning of U.S.S.G.s 3B1.1(b), and we affirm the conviction of Irene Hughes on Count Two. We also affirm the district court's decisions on all remaining issues.
 
 
 48
 AFFIRMED IN PART, REMANDED IN PART WITH INSTRUCTIONS
 
 
 49
 HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 50
 I concur in all of the majority opinion except Part IV. I would reverse Hughes' conviction on the ground that there is insufficient evidence that Hughes conspired to defraud the United States.
 
 
 51
 The majority does not attempt to refute Hughes' contention that the court's instructions were limited to the currency reporting requirements and the interstate travel statute.[1] See slip op. 19-20. The majority focuses on the evidence of Hughes' involvement in the alleged conspiracy to violate 31 U.S.C. §§ 5313(a) and 5322(b). The majority's focus is the correct one, but I do not agree that there exists sufficient evidence to sustain the conviction.
 
 
 52
 The majority asserts that the testimony of Raymond Hite is a sufficient evidentiary basis upon which Hughes' conviction may be upheld. As far as I can tell, Hite's testimony is the only evidence of Hughes' involvement in a conspiracy to violate the currency reporting laws. Hite's testimony covers more than 350 pages in the joint appendix; the testimony cited by the majority consists of the following snippet (J.A. 795-96):
 
 
 53
 Q. All right. Now there are certain-and this piece of property [Venable Street], there was a use of cashier's checks; is that correct?
 
 
 54
 A. Yes.
 
 
 55
 Q. And that has continued to occur in a number of these pieces of property?
 
 
 56
 A. Yes.
 
 
 57
 Q. Were those cashier's checks ever reflected in the documents put into evidence by the government? And they are in the amounts less than $10,000. Why is that, Mr. Hite?
 
 
 58
 A. To avoid the cash reporting.
 
 
 59
 Q. All of it-was Ms. Mickle and Ms. Hughes aware of the cash transactions?
 
 
 60
 A. Yes.
 
 
 61
 Q. How do you know that?
 
 
 62
 A. Because they were involved on many of the transactions, because they had to go and get cashier's checks.
 
 
 63
 We are never told what sort of cashier's checks"they had to go and get." There was no attempt by the government to develop further evidence tying Hughes to currency transactions involving less than $10,000. During cross-examination, however, Hite was asked: "Tell me what cashier's check or checks do you personally know that Irene Hughes purchased." (J.A. 970). The only check cited by Hite was a cashier's check that was used to pay off a note on the Bainbridge Street property. This check was in an amount greater than $10,000.[2]
 
 
 64
 The crux of the government's case against Hughes was that she acted as a nominee for property purchased by Butler as part of his cocaine-based money laundering scheme. Hughes, as nominee, purchased property at 4508 Stuart Avenue, 3810 Moss Avenue and 1102 West Cary Street. See Indictment p 94-96, 98-100, 351. Nowhere in the indictment is there any link between Hughes and a structured currency transaction.[3]
 
 
 65
 In stark contrast to the absence of any specific evidence (or even an allegation) that Hughes was involved in any aspect of structuring or an agreement to defraud the United States through the evasion of reporting requirements, Count 2 lists 18 specific structured transactions attributable to Allen alone (indictment p 366-369, 416-29); three attributable to Butler and Allen (indictment p 453-455); seven attributable to Mickle and Butler (indictment p 458-64); three attributable to Murphy and Butler (indictment p 348-350); and 20 attributable to Butler and various unindicted persons (indictmentp 309-317, 393-403).[4] Other than Hite's testimony quoted above, there is simply nothing in the record to support a finding that Hughes knew of, participated in, or was in any way connected to a conspiracy to violate the reporting laws.
 
 
 66
 Thus, in a five-defendant, 27-count prosecution that involved a two-week trial, some 2000 pages of transcript and 144 numbered government exhibits, proof of the structuring charge essentially comes down to a single unsupported assertion by Hite. The record is essentially devoid of evidence that she conspired to defraud the United States by structuring currency transactions to evade the reporting requirements. On this record, I am unable to find that any rational juror could have found Hughes guilty beyond a reasonable doubt under count 2. Jackson v. Virginia, 443 U.S. 307 (1979).
 
 
 
 [1]
 Anderson, Harris, Tyler, and Tillman are not parties to this appeal
 
 
 [2]
 The Appellants assert two collective claims. First, they argue that the charges against all Defendants should have been dismissed because the Government selectively prosecuted only African-Americans. Second, they argue that the district court erred in admitting into evidence the testimony of Donald Flax regarding statements made by his dead brother, Daniel
 Appellants also assert individual claims of error. Both Butler and Allen contest the district court's finding that the conspiracy to distribute cocaine involved sixty-seven kilograms of cocaine. Allen argues that the district court abused its discretion when it denied her motion for severance, and that it should not have grouped her counts of conviction into multiple groups. Sharon Mickle challenges the district court's instruction to the jury on the conscious avoidance of specific knowledge and its denial of her motion for a new trial based on the Government's late disclosure of Brady material. Irene Hughes contends that the district court's finding that funds relating to 3810 Moss Side Avenue and 4508 Stuart Avenue were drug proceeds was clearly erroneous. None of these claims has any merit.
 
 
 [3]
 Daniel Flax was killed in a drug-related homicide in June 1989
 
 
 [4]
 Butler also used others to receive drug proceeds for him. For example, Henderson testified that, on at least five occasions, he delivered between $5,000 and $10,000 in cash to Sharon Mickle at the grocery store
 
 
 [5]
 For example, the laundromat operated on a cash basis. Raymond Hite testified that he fabricated the laundromat's income, recording on the books an amount equal to the actual income plus whatever amount of drug proceeds Butler wished to launder
 
 
 [6]
 Butler would often place a lien on the property so that the nominal owner could not sell the property without his consent
 
 
 [7]
 The court imposed a sentence of life imprisonment and a five year period of supervised release on Count One and an identical sentence on Count Twenty Seven. The court ordered these sentences to run concurrently
 
 
 [8]
 Although conspiracy and continuing criminal enterprise involve different statutes, "[i]t has long been understood that separate statutory crimes need not be identical " either in constituent elements or in actual proof " in order to be the same within the meaning of the constitutional prohibition [of the Double Jeopardy Clause]." Brown v. Ohio, 432 U.S. 161, 164 (1977)
 
 
 [9]
 Prior to sentencing, Butler moved the district court to merge his conviction under § 846 with his conviction unders 848 on grounds of double jeopardy. The district court denied the motion
 
 
 [10]
 Count Twenty-Seven of the Indictment alleges that Butler "did engage in a Continuing Criminal Enterprise, that is, he did violate Title 21, United States Code, Sections 841 and 846, ... including, but not limited to those violations alleged in the instant indictment, which are realleged and incorporated by reference herein, and did commit other violations of said statutes...." (J.A. at 146 (emphasis added).)
 
 
 [11]
 The Indictment charged Butler in Counts Three through Eight with various substantive violations of the drug laws, (J.A. at 132-34); however, each of those violations was specifically mentioned as an overt act of the conspiracy charged in Count One. (J.A. at 73-74.) Thus, although the continuing criminal enterprise charge specifically incorporated by reference the substantive drug counts as predicate acts, the conspiracy charge convered exactly the same conduct
 
 
 [12]
 Although the Indictment alleges that Butler "did commit other violations of said statutes," the Government proved no offenses that could have served as predicate offenses for the continuing criminal enterprise charge other than those set forth in the Indictment
 
 
 [13]
 See also United States v. Rivera-Martinez, 931 F.2d 148, 153 (1st Cir.) (applying Ball to vacate § 846 conspiracy conviction), cert. denied, 112 S. Ct. 184 (1991)
 
 
 [14]
 In an unpublished disposition, a previous panel of this circuit has followed Ball to reach the same result. United States v. Williams, No. 90-1915, 1991 U.S. App. LEXIS 12,915 at n.3 (4th Cir. June 21, 1991) (per curiam), cert. denied, 112 S. Ct. 398 (1991)
 
 
 [15]
 Using the same procedure, the court arrived at the same total adjusted offense level of forty-two for Counts Four, Seven, and Eight
 
 
 [16]
 We note that the parties, the presentencing officer, and the court below were under the impression that Butler's base offense level for continuing criminal enterprise should be thirty-eight, based ons 2D1.5(a)(2). Section 2D1.5 instructs the court to sentence the defendant according to the greater of thirty eight or four plus the base offense level from § 2D1.1. In this case, Butler's offense level under § 2D1.1(c)(4) was thirty-six. Thus, it appears that Butler should have received a base offense level of forty under § 2D1.5(a)(1), and an adjusted offense level of forty-two. Because the Government did not raise this issue, we decline to correct it
 
 
 [17]
 According to the Sentencing Table, an offense level of forty-three, when combined with Butler's Criminal History Category II, produces a sentencing range of "Life." U.S.S.G. Ch. 5, Pt. A, Sentencing Table
 
 
 [18]
 Section 3B1.1 provides: Based on the defendant's role in the offense, increase the offense level as follows:
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
 U.S.S.G. § 3B1.1.
 
 
 [19]
 The decisions of the First Circuit in Fuller and the Second Circuit in Lanese are not controlling precedent in this Circuit, nor do we find them persuasive
 
 
 [20]
 Both Ray Hite and Landis Few testified that they purchased cocaine from Murphy, who in turn had obtained it from Allen
 
 
 [21]
 Allen graduated cum laude from Virginia Union University with a degree in business administration. She was licensed as a real estate agent and had worked with Butler since 1977, initially at the same real estate firm
 
 
 [22]
 Hughes also argues that the Government did not prove beyond a reasonable doubt that the properties which she nominally purchased were acquired with the proceeds of Butler's unlawful activity. Section 1956(a)(1) requires that a financial transaction, in order to serve as the basis of a conviction, must "in fact involve[ ] the proceeds of specified illegal activity." 18 U.S.C. § 1956(a)(1). To obtain Hughes's conviction, however, the Government did not have to meet this burden. Hughes was not convicted of a substantive violation of 18 U.S.C. § 1956(a)(1), but rather of conspiracy to commit that offense. Consequently, the evidence must support no more than each of the elements of conspiracy to sustain that conviction
 Even if the Government were required to prove that the funds were "in fact" drug proceeds, it proffered sufficient testimony to carry that burden. Ed Bishop, an agent of the IRS, traced the funds back to several checking accounts into which Butler had deposited both legitimate funds and drug proceeds. The Government does not have to trace the funds involved in a financial transaction to particular drug proceeds. United States v. Jackson, 935 F.2d 832, 840 (7th Cir. 1991). Congress did not intend that "participants in unlawful activities could prevent their own convictions under the money laundering statute simply by commingling funds derived from both 'specified unlawful activities' and other activities." Id.; see also United States v. Turner, 975 F.2d 490, 496-97 (8th Cir. 1992) (jury could infer that money used by defendant came from drug sales; government does not have to prove with direct evidence), cert. denied, 1993 U.S. App. LEXIS 936 (1993); United States v. Blackman, 904 F.2d 1250, 1257 (8th Cir. 1990) (government does not have to trace money to particular drug sales). As long as the transaction involved funds derived from an account into which drug proceeds had been commingled, the transaction fell within the prohibition of the statute.
 
 
 [23]
 Hughes makes much of a statement by the district court in its Special Verdict on forfeiture. In its written Verdict, the district court stated that "[t]he evidence presented at trial demonstrated that Defendant Hughes was not involved in structuring financial transactions, or interstate travel." (J.A. at 2069-H.) Hughes argues that this statement implies that the evidence did not support her conviction for conspiracy to commit those offenses. Even if Hughes's interpretation were correct, we would respectfully disagree for the reasons stated above. When read in context, the statement expresses simply that the evidence would not support a conviction of a substantive violation of either 18 U.S.C. § 1956(a)(1)(B)(ii) ors 1956(a)(1)(A)(1) (1988)
 
 
 [1]
 The government does not argue that the evidence is sufficient to support a conviction based on the interstate travel aspect of the alleged conspiracy
 
 
 [2]
 The cashier's check to which Hite referred was apparently not introduced into evidence. The government's exhibit # 49F, the proceeds check from the sale of the Stuart Street property, was converted to a cashier's check and then used to pay off the Bainbridge Street property. The proceeds check was also in excess of $10,000
 
 
 [3]
 In his closing argument to the jury, the prosecutor seems to concede that Hughes was not guilty of structuring. In response to Hughes' lawyer's clos ing argument that the structuring charge was not proved, the prosecutor stated:
 [Hughes' lawyer] stood up and told you that you will look at thee indictment and you will see that Ms. Irene Hughes is charged with structuring-defrauding the government by structuring, and because she did not do that-and there is no evidence-but because she did not do that, she is not guilty of count 2. He forget to tell you that count 2 also involves other aspects that are a violation of the law.
 
 
 [4]
 The indictment also lists more than 500 bank deposits that were allegedly tied to the false crediting of rental or mortgage payments on Butler's properties. Hughes is linked to none of these